[L. A. No. 18836. In Bank. Nov. 28, 1944.]

GLENN WINSLOW et al., Plaintiffs; ELLA STROMGREN, as Executrix, etc., Substituted Plaintiff in Intervention, v. HAROLD G. FERGUSON CORPORATION (a Corporation) et al., Defendants; RAYMOND TREMAINE, Appellant; R. E. ALLEN et al., Respondents.

Tuttle & Tuttle for Appellant.

Meserve, Mumper & Hughes for Respondents.

CURTIS, J.—Appellant, who is now an officer in the United States Army, was practicing law in the city of Los Angeles before the commencement of the war. He has appealed from a minute order made on June 8, 1943, denying his motion to vacate an order which was rendered during his military absence and which subordinated his previous allowance of counsel fees for preserving a trust fund to the claims of creditors thereof.

It is a well-established doctrine of equity jurisprudence that where a common fund exists to which a number of persons are entitled and in their interest successful litigation is maintained for its preservation and protection, an allowance of counsel fees may properly be made from such fund. By this means *all* of the beneficiaries of the fund pay their share of the expense necessary to make it available to them. (14 Am.Jur. § 74, p. 47; *Trustees of Int. Imp. Fund* v. *Greenough*, 105 U.S. 527 [26 L.Ed. 1157]; *Estate of Marre,* 18 Cal. 2d 191 [114 P.2d 591]; see, also, notes 49 A.L.R. 1149; 107 A.L.R. 749].) The propriety of the objections raised on this appeal depends in large measure upon the application of this equitable principle to the facts of this case.

On January 30, 1931, certain beneficiaries of the so-called

Ferguson Trust No. 50—"on behalf of themselves and on behalf of all other holders of certificates of beneficial interest" therein—commenced an action to protect the trust assets. Under the declaration of trust, executed in 1927, the Metropolitan Trust Company was a passive trustee and the Harold G. Ferguson Corporation was named "executive agent" and "syndicate manager" with "uncontrolled discretion" in the conduct of all investment matters relating to the administration of the trust property. It was alleged in the complaint that the Ferguson Corporation became insolvent, and for this and other reasons it became impossible to carry out the purposes of the trust; that it was impossible to appoint a succeeding trustee; and that the appointment of a receiver was necessary to prevent "great and irreparable injury to . . . all . . . holders of beneficial interests in said trust, together with the creditors" thereof. Accordingly, plaintiffs sought by their complaint to terminate the trust and to secure judicial administration and liquidation of the trust assets "for the preservation of all equities, rights, properties, claims and liens of all creditors and holders of beneficial interest in said trust." At the request of plaintiffs, R. E. Allen was appointed receiver pendente lite. Attempts were made by certain named defendants to have the action dismissed because not brought to trial within five years, and as an outgrowth of such proceedings another trust beneficiary on May 28, 1936— "on her own behalf and on behalf of all other owners of beneficial interests in Private Trust No. 50, . . . and on behalf of all creditors of said trust"—intervened in the litigation, also seeking the termination and liquidation of the trust and distribution of its assets to all persons entitled thereto, including creditors. The litigation was brought to a successful close, so far as the merits of the controversy were concerned, by the entry of an interlocutory judgment on March 5, 1940, dissolving the trust and making the receivership permanent for the purpose of completing the liquidation of the trust assets.

Appellant was one of counsel representing both the plaintiffs and the plaintiff in intervention, and he has succeeded to the interests of his associate attorneys in the matter of claims for legal services rendered. In this connection the first award was that of April 25, 1934 (which was prior to the date of the intervention), when the court made its order that "the

fee of Raymond Tremaine, attorney for said plaintiffs, shall be not less than $500 and shall be not more than 2½ per cent of all moneys or the value of other property ordered distributed by this court to the beneficiaries of that certain trust heretofore described as P.T. 50 of the Metropolitan Trust Company of California, the exact amount and time of payment of said fee to be determined later. . . .'' The $500 was paid by the receiver. No further award was made for some seven years. During that time, as above noted, an intervener came into the case and extensive services were performed by both counsel for plaintiffs and intervener in recovering and protecting the assets of the involved trust. Then, on August 11, 1941, following a joint application of plaintiffs and plaintiff in intervention, the court made its order that the total attorneys' fees for the several counsel appearing ''be and they are hereby fixed at $5,000.00, the reasonable value thereof, of which $500.00 has been heretofore paid to Raymond Tremaine. Any previous orders for attorneys fees of plaintiffs are hereby modified to this extent.'' The order then directed that R. E. Allen, the receiver, pay to Raymond Tremaine from ''sums available to him as receiver the balance of $4,500.00 . . . when said receiver shall have sufficient sums available to make the entire payment, or part thereof, or whenever this court shall determine there are sufficient funds available to pay these attorney fees.''

A current account was filed by the receiver on December 8, 1942, in which he reported on the claims and petitioned for instructions as to their priority. On December 18, 1942, the court, in accordance with the receiver's petition, ordered that he pay the $4,500 balance of the prior allowance to appellant *after* the claims of the creditors were paid. Thus, this order in effect limited the source for payment of the attorney fees to funds which would belong to the beneficiaries of the trust. On February 17, 1943, appellant filed a notice of appeal from the order of December 18, 1942, and on March 24, 1943, he filed a notice of motion in the superior court to vacate that part of the order of December 18, 1942, by which his allowance of counsel fees was subordinated to the claims of creditors, on the ground that he was in military service and had not been given notice before the order was made. This motion was denied without prejudice, for lack of jurisdiction because of the appeal. Thereafter appellant filed with the clerk of the superior court a written abandonment of the appeal. Then

on June 2, 1943, appellant filed another notice of motion to vacate the portion of the order of December 18, 1942, which affected his interest, and based his application again on the fact that the prejudicial order was made during his absence in military service and that he was entitled to relief under the Soldiers' and Sailors' Civil Relief Act of 1940. (54 Stats. L. 1180, § 200; Tit. 50, U.S.C.A. Appendix, § 520.) The present appeal is from the order denying this renewed motion.

At the outset the circumstances of appellant's procedure as regulated by the cited federal act should be noted. Section 200, subdivision (1), of said act forbids the entry of a "judgment" in any action or proceeding commenced in any court, "if there shall be a default of an appearance by the defendant," without the plaintiff first filing "an affidavit setting forth facts showing that the defendant is not in military service" or in lieu thereof, the court appointing "an attorney to represent defendant and protect his interest." Admittedly no such preliminary steps were taken here prior to the entry of the order of December 18, 1942. Section 200, subdivision (4), of said act provides: "If any judgment shall be rendered in any action or proceeding governed by this section against any person in military service during the period of such service . . ., and it appears that such person was prejudiced by reason of his military service in making his defense thereto, such judgment may, upon application, made by such person or his legal representative, not later than ninety days after the termination of such service, be opened by the court rendering the same and such defendant or his legal representative let in to defend; provided it is made to appear that the defendant has a meritorious or legal defense to the action or some part thereof."

 The applicability of the act in probate matters was considered in *In re Cool's Estate* (1941), 19 N.J.Misc. 236 [18 A.2d 714], wherein after assigning to the "petitioner" and "an interested party" in such proceedings the respective status of "plaintiff" and "defendant," the court aptly said at page 716 [18 A.2d]: "The definition of a 'judgment' as a final determination of the rights of parties includes decrees of equity and probate courts. 30 Am.Jur. 822, Judgments, § 3. Since the Federal Act is for the purpose of protecting the rights of persons in military service and any judgment affecting the rights of such persons may be opened, stayed or vacated, a liberal construction should be accorded so that in probate court proceedings in default of any appearance by an

interested party, either male or female, an affidavit as to military service should be filed or other action taken in accordance with the Federal Act." Upon like reasoning appellant's objection to the order of December 18, 1942, as an adjudication of the priority rights of claimants for payment from the trust assets here involved and adversely affecting his previous allowance for attorney fees, comes within the protective design of the federal act.

Two preliminary points remain to be considered with regard to appellant's procedure herein. As above noted, appellant, pursuant to section 954a of the Code of Civil Procedure, filed in the trial court a written abandonment of his appeal from the order of December 18, 1942, and "the jurisdiction of the trial court over the subject matter of the . . . order . . . [was] completely restored." Consistent with this specific language, appellant's abandonment of his appeal "before the filing of the record or transcript in the [appellate] court" would not deprive the trial court, restored to *complete jurisdiction* in the matter, of the power to modify or vacate the objectionable order in appropriate circumstances. (4 C.J.S. §1386, p. 2007; *State* v. *Superior Court of Franklin County*, 86 Wash. 90 [149 P. 321].) The argument is made that an abandonment should be treated as the equivalent of a dismissal of an appeal *(Allen* v. *Brice*, 40 Cal.App.2d 93 [104 P. 2d 374]—"in effect an affirmance of the . . . order appealed from, unless the dismissal is expressly made without prejudice to another appeal." (Code Civ. Proc., § 955.) Such claim, of course, totally disregards the *distinct* statutory provisions regulating the *effect* of the respective procedures—an abandonment of an appeal accomplished through specified action in the trial court and a dismissal of an appeal through the order of an appellate court. Had the Legislature intended that a voluntary abandonment of an appeal was to have the same force as a dismissal, it is but reasonable to assume that in 1935 instead of enacting section 954a to provide for the abandonment procedure and the *effect* thereof, it would have amended section 955 to include the new matter. In view of this deliberate statutory distinction, cases dealing with the *effect of a dismissal of an appeal* from an order in establishing the terms of its finality *(Smith* v. *Superior Court*, 21 Cal.App. 2d 160 [69 P.2d 176]) have no application here as a basis for precluding appellant from seeking relief in the trial court under authority of the cited federal act.

Nor does the general rule which forbids an appeal from an order refusing to vacate a prior appealable order (2 Cal.Jur. 164, § 30 et seq.) operate to appellant's disadvantage under the circumstances here prevailing. In those cases *where the law makes express provision for a motion to vacate*—as under sections 473, 473a and 663, 633a of the Code of Civil Procedure—an order denying such motion is regarded as a "special order made after final judgment" and as such is appealable under section 963, subdivision 2, of the Code of Civil Procedure. (*California Delta Farms* v. *Chinese American Farms,* 201 Cal. 201 [255 P. 1097] ; *Funk* v. *Campbell,* 15 Cal.2d 250 [100 P.2d 762].) A like situation exists here where appellant, in moving to vacate the order in question, was undertaking to avail himself of a remedy *expressly provided by federal statute.* Congress, in the lawful exercise of its constitutional power, has thereby declared its purpose to protect those in the military service and to prevent injury to their civil rights during their term of service arising from judicial proceedings conducted against them in their absence. Such act is the supreme law of the land. (U. S. Const., art. VI, § 2 ; Cal. Const., art. I, § 3 ; Annotation, 130 A.L.R. 774.) The broad and sweeping relief provision of the act as above quoted, expressly conferring upon one in appellant's position the right to make the *motion to vacate at any time within ninety days after termination of military service,* was manifestly intended as a *complete remedy,* thus comprehending as a part thereof an appellate review of an adverse ruling and independent of the pursuit of an appeal from the alleged prejudicial order. According full recognition to the import of the federal act and by a parity of reasoning on the basis of legislative intent as to the availability of an appeal from an order denying an authorized motion to vacate under state law, as above noted, appellant's right to prosecute the present appeal is not open to challenge.

Turning now to a consideration of the merits of this appeal, the following points appearing of record herein must be noted. As above recited, on April 25, 1934, after the application of counsel for plaintiffs only, the court ordered that the attorneys' fee should be not less than $500 and should be no more than 2½ per cent of assets to be distributed to the trust beneficiaries, "the exact amount and time of payment of said fee to be determined later." Obviously, this order was inter-

locutory only in its effect. It provided for plaintiffs' legal expenses while acknowledging that other extensive labors should be performed in order to effect the ultimate purpose of the litigation. As contemplated, the proceedings continued over a protracted period of time—a complaint in intervention was filed on behalf of all interested parties, including creditors; the many connected details thereafter arising in the conduct of the action required constant and efficient attention from both counsel for intervener and counsel for plaintiffs; and the merits of the controversy were not brought to a successful close until March 5, 1940, when an interlocutory judgment was entered dissolving the trust and making the receivership permanent for the purpose of completing the liquidation of the trust assets. Then, on August 11, 1941, following a hearing on the joint application of all counsel and consideration of detailed affidavits enumerating the valuable legal services rendered over the years, particularly since the date of the intervention, a definitive order was made for counsel fees and costs of plaintiffs and intervener. The court, for the first time presented with the request for an allowance for counsel for intervener and in the exercise of the jurisdiction expressly reserved under the terms of the initial award to counsel for plaintiffs, undertook a complete appraisal of the record and the resulting order contained no limitations. It prescribed a sum to be paid upon its implied finding that services had been rendered to the trust. Such later order, necessarily involving an adjudication of the meaning and effect of the prior allowance, is both final and conclusive. (*Semple* v. *Wright*, 32 Cal. 659, 668; *Tyrrell* v. *Baldwin*, 67 Cal. 1, 5 [6 P. 867].) The amount of the total attorney fees finally determined as reasonable—$5,000—is some indication of the extent and value of the legal services which the court considered had been furnished to the trust. In view of such finding it would seem unjust to withhold from counsel fair compensation. Yet such is necessarily the effect of the order subordinating appellant's award of counsel fees to the payment of the numerous creditors of the trust.

The order of August 11, 1941, directing that attorney fees and costs be paid out of the trust fund preserved through the diligence of counsel for all persons interested therein, finds support in a long prevailing rule in equity which allows such charge as a proper means of securing contribution

from those entitled to participate in the benefits of the litigation. ▇ And such counsel fees are customarily made senior to other claims against the fund. (*Scott* v. *Superior Court*, 208 Cal. 303 [281 P. 55].) ▇ That the court could have made its 1941 award to appellant on no other theory readily appears from the nature of the involved action itself as revealed by the detailed pleadings of plaintiffs and intervener, emphasizing the purpose of the litigation to be the preservation of the trust assets for the protection of *all* claimants thereto. Moreover, the predominance of such equitable principle was recognized by the original order in 1934 in requiring the immediate payment of $500 counsel fees, to which ruling no objection appears to have been made by the receiver, but who, on the contrary, made the payment. ▇ Then wholly inconsistent with the established basis of appellant's allowance from the trust fund, the court, in response to the receiver's petition for instructions as to the priority of claims, made its order of December 18, 1942, giving appellant a secondary ranking. Practically all of the claims given precedence over that of appellant were those of general creditors only. The solitary exception appears to be that of the United States Government for income tax, which is supported by a statutory lien. All of these claims accrued long prior to the institution of this action, were comprehended in the express purpose thereof, and unquestionably were protected as the result of the judicial administration of the failing trust. ▇ Where a lawyer has rendered such valuable service as to make available a fund for a class, even though he appeared for only one claimant, it is equitable that his compensation and expenses should come from the entire fund saved for all classes concerned before it is distributed. (*Sprague* v. *Ticonic Nat. Bank*, 307 U.S. 161 [59 S.Ct. 777, 83 L.Ed. 1184].) Counsel's right to compensation under such circumstances arises from the benefit conferred upon those who would have suffered loss but for his timely intervention, and not by reason of an agreement to pay his fees. (*Buford* v. *Tobacco Growers' Co-op Assn.*, 42 F.2d 791.)

▇ It would be wholly out of line with the traditional concept of equitable practice to pay the expenses of a receiver and the fees of his counsel prior to the participation of any creditor or beneficiary and at the same time to subordinate the

payment of fees to the attorney who has invoked the powers of the court of equity to appoint that same receiver. The expense incurred by a litigant for legal services in causing the appointment of a receiver is as much an expense of administration as the charge of the receiver's counsel and should have priority to the same extent. (*Farmers' Loan & Trust Co.* v. *Green*, 79 F. 222 [24 C.C.A. 506]; *Muskegon Boiler Works* v. *Tennessee Valley I. & R. Co.*, 274 F. 836; *McLane* v. *Placerville & Sacramento Valley R. R. Co.*, 66 Cal. 606, 622-623 [6 P. 748].) As is stated in *Estate of Marre*, 18 Cal. 2d 191, 192 [114 P.2d 591]: "Plaintiffs who have succeeded in protecting, preserving or increasing a fund for the benefit of themselves and others may be awarded compensation from the fund for the services of their attorneys." This principle is derived from the equitable concept that where one of a group has borne the cost of litigation resulting in benefit to the entire group, the latter should contribute to such expenses. (*Nolte* v. *Hudson Nav. Co.*, 47 F.2d 166; *O'Hara* v. *Oakland County*, 136 F.2d 152].)

Not only is it established that the litigant is entitled to be compensated for the expense he has incurred in the prosecution of such an action, but there is created in favor of the attorney who renders the service an equitable lien against the fund so preserved. (*Central Railroad & Bkg. Co.* v. *Pettus*, 113 U.S. 116 [5 S.Ct. 387, 28 L.Ed. 915]; *Colley* v. *Wolcott*, 187 F. 595 [109 C.C.A. 425]; *Muskegon Boiler Works* v. *Tennessee Valley I. & R. Co.*, 274 F. 836.)

These equitable considerations sustain appellant's position as to the priority of his claim against the trust fund. Having rendered valuable service over a period of ten years and having thereby brought into the protective custody of the court the trust assets, which avoided total loss to the creditors, appellant and his associates established their right to preference as against the creditors of the fund. That certain beneficiaries of the trust undertook to institute the action necessary to preserve the trust assets, and another beneficiary intervened for the same purpose, are but formalities of the litigation which do not affect points of substance herein. The pleadings plainly demonstrate that counsel acted for the benefit of all persons interested in recovery of the fund—including creditors and beneficiaries alike—and that legal fees for such service would be a proper charge upon the share due the

creditors as well as upon the excess which might be distributable to the beneficiaries. Creditors daily seek judicial intervention to collect claims from solvent debtors and in such endeavors voluntarily pay for legal services. The situation here is in reality no different insofar as concerns the obligation of the creditors to pay their fair share of the legal expense necessary to maintain the representative and beneficial litigation for their protection. (*Tanner* v. *Superior Court*, 43 Cal.App.2d 732, 736 [111 P.2d 713].) ▮ Nor on equitable considerations should the claim of the federal government for income taxes accrued *before* the commencement of this action stand on a distinguishable level in relation to appellant's allowance for counsel fees for preservation of the fund. The latter, viewed as an expense of judicial administration in making the trust assets available for distribution to claimants, should properly take priority. (1 Clark on Receivers (2d ed.), § 670, p. 951 et seq.; *Kennebec Box Co.* v. *O. S. Richards Corporation*, 5 F.2d 951; *In re Holmes Manufacturing Co.*, 19 F.2d 239; *In re Columbia Ribbon Co.*, 117 F.2d 999; *Bauer & Son* v. *Wilkes-Barre Light Co.*, 274 Pa. 165 [117 A. 920, 24 A.L.R. 1171]; *Malm* v. *Home Riverside Coal Mines Co.*, 152 Kan. 419 [103 P.2d 798].)

From these observations it follows that the order of December 18, 1942, made in response to the receiver's petition for instructions as to the payment of claims against the trust fund, improperly subordinated the allowance of counsel fees and virtually destroyed appellant's rights as established by the prior award of August 11, 1941. Under authority of the Soldiers' and Sailors' Civil Relief Act, appellant was entitled to and did move to vacate the objectionable portion of the 1942 order entered during his absence in military service and to which he had a meritorious defense. In the denial of his motion by order of June 8, 1943, the court erred and appellant justifiably seeks relief therefrom by this appeal. The order therefore is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.