130 Cal.App.2d 521 (1955)
Estate of EIKA V. WITTING, Deceased. THOMAS A. HANNA et al., Appellants,
v.
J. HOWARD STEENSEN, Individually and as Trustee, etc., et al., Respondents.
Civ. No. 20360. 
California Court of Appeals. Second Dist., Div. Three. 
Jan. 31, 1955.
 Hall & Kent, Cameron & Perkins, Simpson, Wise & Kilpatrick, George E. Wise and John R. Kent for Appellants.
 Fogel, McInerny & West, Moe M. Fogel, William J. Taft, Frank J. Kanne and Joseph J. Burris for Respondents.
 SHINN, P. J.
 By decree of distribution under the will of Eika V. Witting, deceased, two trusts were established which provided for the payment of income to life beneficiaries and disposed of the remainders. J. Howard Steensen was appointed trustee of each trust. Among the assets were 350 shares of stock of Jergins Oil Company in one trust and 200 shares in the other. No provision for sale of stocks was made in the decree of distribution. In March 1942, the trustee petitioned the court (Judge Paonessa presiding) for instructions relative to the sale of securities and reinvestment of the funds (Prob. Code, 1120). It was alleged in the petition: "That as to the Jergins Oil Company stock, the fact that it is closely held, not saleable on the open market, and operated without the usual quarterly statements, required of stocks sold on the exchanges, might make its sale difficult in times of stress and its price fluctuation hard to follow." At the time of the hearing, Johanna Steensen Wilken by her attorney, Dean Perkins of Cameron & Perkins, resisted the petition by answer which denied the allegations with respect to the Jergens Oil Company stock and certain other stock of Southern California Edison Company, and prayed that the petition for sale of those stocks be denied. Mr. Perkins was employed by Johanna Steensen Wilken and presented the opposition on her behalf. He was not employed by and did not represent the trustee. By an order which recited "... it appearing to the Court that it is not for the best interests of the Trust Estates that any sale of securities be made at this time," the trustee was given power to sell the securities if the court gave approval upon a hearing after notice to the beneficiaries of the time and place of any hearing for the sale thereof.
 The Jergins Oil Company stock was appraised at $40 per share, or a total of $22,000. In April 1951, the stock of both trusts was sold for a total of $246,092, or about $450 per *523 share. April 3, 1953, Thomas A. Hanna and Johanna Steensen Wilken, life beneficiaries, filed a petition seeking an award of $12,500 to be paid proportionately by the two trusts for the services of Mr. Perkins rendered in 1942 in presenting objections to the sale of the oil company stock. It was alleged in the petition that Mr. Perkins had consulted with various authorities and had come to the conclusion that the stock was underpriced at $40 per share, that it would be unwise to sell the same, that in his investigations and research he had devoted more than 90 hours and that he was active and instrumental in consummating sales in 1951 for a total of $246,092. The trustee filed an answer denying generally the allegations of the petition although it was not denied that Mr. Perkins through his firm filed an answer to the petition of the trustee for sale of the stock in 1942. Los Angeles Orthopaedic Foundation and The Children's Home Society of California, as residuary legatees and beneficiaries as to the remainder, appeared in opposition to the petition for the compensation of Mr. Perkins.
 Following a hearing before Judge Rhodes, the court found that the trustee acted in good faith in March 1942 in requesting instructions relative to the sale of securities and reinvestment of funds; that Johanna Steensen Wilken filed an answer in opposition after Mr. Perkins had devoted 90 hours to legal research, investigation, consultation and correspondence and in investment analysis respecting the Jergins Oil Company and had concluded it would be to the best interests of Johanna Steensen Wilken and the trusts that the stock be not then sold. It was found: "That it is not true that as a direct result of the efforts of Dean Perkins, Esq., the Court on May 27, 1942, made its order in effect requiring the retention of the Jergins Oil Company stock in the Trust, and preventing the sale thereof except upon the filing of a subsequent petition for authority to do so." It was also found that in the year 1943, Mr. Perkins negotiated with the trustee and the latter's attorney relative to the sale of the Homestake Mining stock and the reinvestment of proceeds in securities recommended by Mr. Perkins. It was further found that all the services rendered by Mr. Perkins relative to the trusts and the assets thereof were performed solely on behalf of and at the instance of the beneficiaries, Thomas A. Hanna and Johanna Steensen Wilken, and not at the request of the trustee nor for the benefit of the trust; also that the time and efforts spent by Mr. Perkins as aforesaid did not result *524 in the preservation of the trust assets nor a benefit to the trust estate and the beneficiary remaindermen and "That none of the trust funds of the Hanna or Wilken trusts were recovered, protected, preserved or increased by the time and effort expended by the law firm of Cameron and Perkins, through Dean Perkins, Esq., while representing the life beneficiaries Thomas A. Hanna and Johanna Steensen Wilken. ... That the increase in value of both of the Trust Estates was due solely to the appreciation in value of the Jergins Oil Company stock held by said trust, and not by reason of the time and effort expended by the law firm of Cameron & Perkins, by Dean Perkins, Esq. ... That the appreciation in value of the said Jergins Oil Company stock was due solely to conditions and events beyond the control of either of the petitioners or their attorneys." It was concluded that no allowance should be made for the services of the attorneys and that their claim was barred by the provisions of subdivision 1, section 339 of the Code of Civil Procedure. The petition was denied, and petitioners appeal.
 The crucial question is whether the findings respecting the services of Mr. Perkins find support in the record. There is no dispute as to the nature and extent of the services and the conditions under which they were rendered. We shall pass for the moment the question whether the services would have been compensible had the court found that the efforts of Mr. Perkins accomplished preservation of the trust assets or created a fund which increased the trust assets and shall address ourselves to the question whether the court was warranted in finding that the services of Mr. Perkins were of no substantial value to the trust estate or the remaindermen.
 It was stipulated that the highs and lows for the oil company stock were as follows:
 "1942 high, $ 30.00. Low, $ 25.00."
 1943 high, $ 42.00. Low, $ 32.00.
 1944 high, $ 40.00. Low, $ 40.00.
 1945 high, $ 42.50. Low, $ 40.00.
 1946 high, $ 42.50. Low, $ 42.50.
 1947 high, $ 80.00. Low, $ 75.00.
 1948 high, $ 100.00. Low, $ 90.00.
 1949 high, $ 147.50. Low, $ 147.50.
 1950 high, $ 275.00. Low, $ 150.00
 1951 high, $ 421.50. No record of the low.""
 It will be seen that it was in the fifth year after the hearing before Judge Paonessa that an appreciable increase in the *525 value of the stock took place. It was four years later that the stock was sold for the sum of $246.092. In their petition for compensation of Mr. Perkins and throughout the ensuing proceedings, the appellants have based their claim upon the appreciation in value of the stock in the nine years following the rendition of the services. They have contended that this was the measure of the benefit which they say resulted from the efforts of Mr. Perkins. They endeavor to bring themselves within the rule stated in the Estate of Reade, 31 Cal.2d 669, 671 [191 P.2d 745]: "[A] plaintiff who has succeeded in protecting, preserving or increasing a fund for the benefit of himself and others may be awarded compensation from the fund for the services of his attorney. This is to compel those for whose benefit the action or proceeding was taken to bear their share of the expenses of the litigation; and this rule is equitable and just. [Citing cases.]" Respondents deny that the rule has application and we are constrained to agree with that view.
 The determinative findings are that the order denying the application for immediate sale of the stock did not directly result from the efforts of Mr. Perkins and that the time and effort expended by Mr. Perkins did not result in the preservation of the trust assets or a benefit to the trust estate and the beneficiary remaindermen. It was also found that none of the trust funds were "recovered, protected, preserved or increased by the time and effort expended by the law firm of Cameron & Perkins, through Dean Perkins, Esq."
 It cannot be questioned that the decision of Judge Paonessa that the Jergins Oil Company stock should not be sold at the time permission to sell was sought effected protection and preservation of trust assets and resulted in benefit to the beneficiaries. That was the very purpose of the refusal to sanction an immediate sale. [1] Appellants say the findings that Mr. Perkins' efforts did not result in benefit to the estate cannot stand in view of the great increase in value that took place while the stock was held in the trusts. This contention evidences a misunderstanding of the findings. Appellants came to court with the proposition that Mr. Perkins was entitled to full credit for preventing a sale of the stock and they endeavored to convince Judge Rhodes that such was the fact. It was a difficult undertaking. In the hearing before Judge Paonessa no evidence was introduced. Mr. Perkins stated his views, the attorneys for the trustee stated theirs *526 and there was argument on the opposing opinions of counsel as to the advisibility of a sale. Judge Paonessa, so far as shown by the record, did not state his reasons for the order that he made. Appellants contended before Judge Rhodes that the argument of Mr. Perkins to Judge Paonessa had persuasive force and that but for the objections of Mr. Perkins, the judge would probably have permitted a sale to be made. Judge Rhodes was not convinced. His finding was to the direct contrary. It was an obvious fact that Judge Paonessa may have had reasons of his own. It is generally known that in 1942 prices were depressed. The market price of the Jergins stock was from $25 to $30 a share or from $10 to $15 less than the appraised value. Either of these facts would have been a sound reason for the order. The evidence before Judge Rhodes as to the proceedings before Judge Paonessa utterly failed to prove that Judge Paonessa did not make the order for some reason or reasons other than the objection and argument of Mr. Perkins. Judge Rhodes did not find, as appellants argue, that the trust estates had not been benefited; he found only that no benefit resulted from the efforts of Mr. Perkins. Since there was a deficiency in the proof of appellants to establish the effectiveness of Mr. Perkins' efforts, and since the burden of proof was upon appellants, Judge Rhodes properly declined to find the existence of a fact that had not been established to his satisfaction, and the only alternative was to find that denial of the application for leave to sell and the benefit from the later increase in value of the stock did not result from the efforts of Mr. Perkins. His services, of course, were to be evaluated as of the time they were concluded, and not under conditions existing nine years later. These findings were justified by the evidence and are sufficient to support the order.
 The argument of appellants for application of the rule heretofore quoted from Estate of Reade, 31 Cal.2d 669, supra, is premised upon the proposition that the efforts of Mr. Perkins resulted in a gain to the estate of some $224,000 and it is claimed that he should have a share of that profit as his compensation. The contention is fully discussed in the briefs but it does not call for further consideration. The findings we have discussed, and which we hold were justified by the evidence, dispose of all of the contentions of the appellants.
 We do not believe that Judge Rhodes could properly have found the facts in accordance with the contentions of the appellants. He could have found that the efforts of Mr. Perkins *527 probably contributed in some degree to the result, but he certainly was not required to find that the court would have permitted a sale to be made if Mr. Perkins had not made his objections. Although it was quite evident that the judgment of Mr. Perkins was better than that of the trustee, who sold 550 shares of his own stock in 1942 at $30 per share, it was not the province of Judge Rhodes to be generous with the funds of the estates and to express appreciation for the efforts of Mr. Perkins by way of monetary compensation in addition to the thanks, if any, which he had received from the beneficiaries.
 The order is affirmed.
 Wood (Parker), J., and Vallee, J., concurred.