[Civ. No. 5867.   Fourth Dist.   June 18, 1959.]

Estate of OPAL MAE SWANSON, Deceased. ESTHER L. GRAMLING, Individually and as Administratrix With the Will Annexed, etc., et al., Appellants, v. JANE SWANSON ANDERSON, as Guardian, etc., Respondent.

F. W. Powell for Appellants.

John R. Hellen for Respondent.

SHEPARD, J.—Opal Mae Swanson died testate on June 8, 1954. Esther L. Gramling, her sister, was appointed special administratrix of her estate on June 11, 1954, and administratrix of the estate (with the will annexed) on July 23, 1954. She is one of the appellants herein. The legatees are Mrs. Bertha Sweeney, mother, $100; Helen N. Sweeney, sister, as to one-eighth; Robert Francis Ellis, a stranger, as to one-eighth; Jon Brent Dulong, a step-grandson, as to three-eighths; and Marcia Ann Gramling, a niece, as to three-eighths; each

of the fractions used above referring to the interest in the residuary estate. F. W. Powell, one of the appellants herein, is attorney for said administratrix. Jane Swanson Anderson is the guardian of the estate of Jon Brent Dulong, a minor, above named, and is an objector to certain items of the final account of said administratrix, and is the respondent herein.

Appellant Gramling on July 23, 1957, filed her final account, report and petition for distribution, and her amendment and supplement thereto on August 27, 1957. Appellant Powell filed a separate petition for attorney fees on August 30, 1957. Respondent Anderson filed her objections to the final account on August 8, 1957, and her amended objections on August 20, 1957.

Respondent by her objections asked the disallowance of all trial and appellate court costs, fees and other expenses in connection with certain estate litigation arising out of an attempted sale of the motel property (the principal asset of the estate) to one Springgate. This sale of the property the court refused to confirm because there was attempted to be included therein certain personal property belonging to the estate of John Swanson, the predeceased husband of the testatrix herein. Respondent also asked the disallowance of $306.26 interest plus $20.65 and costs awarded to Springgate when the sale was set aside; $22.15 for flowers to the mausoleum; $6,499.50 alleged to have been lost to the estate through the later sale at a reduced price from that offered by Springgate; $3,294.49 expenses of sale; $239 on claim of F. W. Powell's attorney fees for services to decedent, and $115.30 paid to creditors without the filing of a claim; $28.52 refund to ultimate buyer of the motel because of error in escrow calculations; $1,000 alleged to have been improperly claimed for extraordinary services in managing the motel; $5,700 plus certain office expenses alleged to have been improperly claimed for attorney services, and a portion of the ordinary statutory administratrix and attorney fees alleged to have been improperly calculated.

After trial of the objections and hearing of the account the court made its order surcharging the account of the administratrix in the sum of $489.89, trial and appellate court costs, fees and other expenses involved in the Springgate sale, excepting therefrom $43.65 not involved in the Springgate litigation; disallowing $115.30 paid on debts not justly due from the estate; reducing the gross income figure of $6,824.26 from motel operation to $2,865.21 as the net income from motel operation, and deducting $41,359.20 secured indebtedness assumed

by the purchasers on the sale of the motel, thus bringing the total estate accounted for, for the purpose of calculating ordinary statutory fees of the administratrix and attorney, to the sum of $24,008.99, with the resultant ordinary fee to each in the sum of $850.27; allowance of $1,000 to the administratrix for extraordinary services instead of the ultimate claimed amount of $1,750; allowance of $1,500 to administratrix' attorney for extraordinary services instead of the ultimately claimed amount of $3,500; and allowing to the objector for her attorney's fee in preventing the improper depletion of the funds of the estate the sum of $852.21.

The appeal is taken from portions of the order hereinafter set out. 1. Allowing to objector-respondent $852.21 from the funds of the estate as her expense for attorney's fees in protecting the funds of the estate from improper depletion. 2. Order allowing the sum of only $850.27 to appellant Gramling as her ordinary statutory commissions for administration. 3. Order allowing the appellant Powell only the sum of $850.27 as his ordinary statutory commissions as attorney for the administratrix. 4. Order surcharging appellant Gramling with $487.89 claimed on account of court costs and expenses on Springgate sale and litigation connected therewith.

Appellants contend that the equitable rule referred to in *Estate of Reade,* 31 Cal.2d 669, 671 [3] [191 P.2d 745], that a party litigant who preserves, protects or increases the fund for the benefit of himself and others should receive compensation from the common fund for the services of his attorney in order that all who receive the benefit should bear their just share of the expense of the litigation, ought not to be applied in probate cases except where new money is brought into the estate. This question is squarely passed upon in *Estate of Lundell,* 107 Cal.App.2d 463, 464 [1] [237 P.2d 62], in which the precise problem of executors seeking excessive fees and being prevented from receiving same by objections was presented. ██ The court there said:

"The probate court may make an allowance of attorneys' fees for services rendered to a party who successfully objects to charges against an estate in an executor's account. Such allowance is predicated upon the equitable rule that fees for legal services rendered in preserving a common fund for the benefit of all heirs or persons interested in an estate are proper charges against such fund. Each beneficiary should bear his proportionate share of expenses of litigation as a

result of which he derives a benefit. (*Estate of Reade,* 31 Cal. 2d 669, 671 et seq. [2] [191 P.2d 745].)''

The equitable rule referred to in *Estate of Reade, supra,* has been recognized and repeated in many cases and applied or rejected in accordance with the particular facts there before the court. *Farmers etc. Nat. Bank* v. *Peterson,* 5 Cal.2d 601, 607 [8] [55 P.2d 867] (applied because a single beneficiary bore the brunt of expense to preserve the common fund for all); *Winslow* v. *Harold G. Ferguson Corp.,* 25 Cal.2d 274, 285 [12] [153 P.2d 714] (applied because a single beneficiary bore the expense of aiding the assets of the trust for the benefit of all beneficiaries); *Estate of Marré,* 18 Cal.2d 191 [114 P.2d 591] (not applied because each contending beneficiary was represented by counsel); *Estate of Witting,* 130 Cal.App.2d 521, 525 [1] [279 P.2d 180] (not applied because the court was unable to affirmatively find that the action directly resulted in a benefit to the estate); *Estate of Bullock,* 133 Cal.App.2d 542, 546 [1-2] [284 P.2d 960] (not applied because each beneficiary was represented by his own attorney in same litigation). We agree with the opinion in *Estate of Lundell, supra.* ▇ We see no rational distinction between the case of bringing in new property into an estate and the case of protecting the common fund from depletion by excessive claims that the lawful protector of the estate, to wit, the executor or administrator, seeks improperly to have allowed. In our opinion, the order of the trial court in the case at bar was correct.

▇ In the second point of the appeal the appellants contend that the probate court was in error in using, as its basis of calculation of ordinary statutory administratrix and attorney fees, the *net* value of the motel property, arrived at by deducting from the appraised value thereof the amount of the outstanding encumbrance at the time of sale. Appellants further contend that the fees should have been calculated on the total *gross* purchase price as ''estate accounted for.'' The record before us is not entirely complete but it indicates that the holder of the encumbrance did not file a claim against the estate; that the appellant Gramling did not *receive* the gross purchase price; that she did not *pay* the encumbrance; that she received *only* the difference between the purchase price and the outstanding encumbrance. ▇ In our opinion, this state of facts places it in line with the decision in *Estate of Lampman,* 15 Cal.2d 212, 218 [3] [100 P.2d 488] where the court, quoting from *Estate of Pease,* 149 Cal. 167, 171 [85 P. 149],

says: " 'The general rule appears to be that where property subject to an encumbrance is sold, the executor is entitled only to commissions on the net purchase price in excess of the encumbrances.' "

The court there further discusses the entire matter at length and recognizes the possibility that in some instances the enforcement of the quoted rule might work an injustice. It then goes on to say:

"In this connection it may be noted that both the executrix and the attorney herein received additional fees for extraordinary services in connection with the management and sale of the apartment house and the administration of the estate. This power of the court to grant additional fees for extraordinary services is one which may be used to equalize any injustice which may result when the estate upon which the commissions are allowed is small, and the services involved are extra onerous."

On the facts as they appear on the record before us the trial court was correct.

As a part of this same point on appeal, appellants complain that the probate court was in error in using the *net* income from the operation of the motel instead of the *gross* income as the basis for calculating fees. In *Estate of Reinhertz*, 82 Cal.App.2d 156 [185 P.2d 858, 186 P.2d 755], the court was confronted with the identical situation here presented, to wit, whether or not the *gross* receipts or the *net* receipts from an apartment house operation should be used in calculating fees. It there stated:

"The operation of an apartment house is not in the same class as the ordinary rental of real property and partakes more of the nature of the operation of a business. . . . In the operation of a business the executor is bound to, and should, only account to the estate for the net income or profits."

We are in accord with the opinion in *Estate of Reinhertz, supra*. The action of the trial court was not an abuse of discretion. It is undoubtedly true that trial courts may at times be confronted with close questions as to whether or not the income from certain properties should be treated as ordinary rentals or as the operation of a business. But where, as here, it awards extraordinary fees in substantial amount to compensate for possible inequities we can see no impropriety.

What we have said above applies equally well to the third point of appeal presented by appellant Powell and disposes of that issue.

In their fourth point of appeal, appellant Gramling claims the court was in error in denying her credit in the amount of $487.89 on account of interest, court costs and expenses on the Springgate litigation. Again, the record is not entirely complete but it clearly indicates, and the evidence is sufficient to support the opinion of the trial judge, that these items resulted from her legal fault in including in the sale of the motel property certain property which did not belong to the estate, and that her pursuit of litigation in the Springgate matter was "without just cause." This resulted in a serious loss to the estate from the reduction in the sale price to a new purchaser (for which loss no surcharge was made). The delays caused by her unsuccessful appeal compelled the payment from estate funds of substantial interest for a $7,000 deposit which appellant refused to return in the interim to the unsuccessful buyer. This makes up about three-fifths of the total surcharge.

"When a judgment is recovered, with costs, against any executor or administrator, he shall be individually liable for such costs, but they must be allowed him in his administration accounts, unless it appears that the suit or proceeding in which the costs were taxed was prosecuted or defended without just cause." (Prob. Code, § 719.)

"It is within the discretion of the court to assess these costs against the executor personally without making any particular finding of mismanagement or bad faith." (*Title Ins. etc. Co.* v. *Gould,* 47 Cal.App. 533, 536 [4] [191 P. 556].)

The oral comments of the trial judge do not form a part of the final judgment and cannot be used to impeach the finding and judgment. (*Estate of Bullock, supra,* page 549 [4].) In the present state of the record before us, we cannot say as a matter of law that the court's action in disallowing the credit referred to was incorrect.

The order appealed from is affirmed.

Griffin, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied July 14, 1959, and appellants' petition for a hearing by the Supreme Court was denied August 12, 1959.