Filed 11/20/14  Gaynor v. Buhlen CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| DOROTHY W. GAYNOR et al.,<br>        Plaintiffs and Respondents,<br><br>    v.<br><br>E.H. BULEN et al.,<br>        Defendants and Appellants. | D064872<br><br><br>(Super. Ct. No. PN16579) |

APPEAL from an order of the Superior Court of San Diego County, Richard G. Cline, Judge.  Affirmed.

Law Office of A. Daniel Bacalski, A. Daniel Bacalski, Jr.; Dube Law Office, Douglas A. Dube; Karcher Harmes and Kathryn E. Karcher for Defendants and Appellants.

Jay-Allen Eisen Law Corporation, Jay-Allen Eisen, Aaron S. McKinney; Witham Mahoney & Abbott, Daniel W. Abbott, Matthew M. Mahoney and Charles B. Witham for Plaintiffs and Respondents.

INTRODUCTION

E.H. Bulen and Christopher Bulen (collectively the Bulens), the former cotrustees of a family trust, appeal an order awarding attorney fees to their cousins, Dorothy Gaynor, James Wilmot, Michelle Gaynor and Max Gaynor (collectively the Gaynors) who prevailed in a probate action regarding interpretation and administration of the Bulen Trust (Trust). The court determined the terms of the Trust required appointment of a neutral corporate successor trustee to administer the Trust rather than a committee of family members serving as cotrustees, which is what had occurred for decades. The court then appointed a corporate trustee that assured the court it will follow the express terms of the Trust and make income distributions sprinkling among the generations of beneficiaries, as opposed to the long-standing practice of the former cotrustees to only distribute income to the most senior generation of beneficiaries. The trial court awarded the Gaynors attorney fees after it concluded their efforts resulted in obtaining access to Trust fund income for younger generations, which previously was unavailable. We affirm, concluding the trial court properly exercised its equitable discretion to award fees under the common fund doctrine.

FACTUAL AND PROCEDURAL BACKGROUND

*Background of the Trust*

The Trust was established in 1968 by Edwin Bulen,[1] the ancestor of the appellants and respondents. The Trust holds several parcels of real estate comprising a 44-acre commercial shopping complex in Escondido, California. Tenants include Home Depot, Wal-Mart, CT Storage, AutoZone, Wells Fargo and Chase Bank. At the time of trial, the Trust's real estate holdings were valued at approximately $13 million, with a net value of approximately $7.5 million. The Trust produces about $1.2 million in annual gross income, of which approximately $360,000 is distributed annually.

Edwin was the initial trustee and he amended the Trust six times before his death in 1983. Edwin's heirs included his three children: William H. Bulen (Bill), James A. Bulen (Jim), and Mary C. Wilmot (aka Mary C. Bulen).

According to the terms of the Trust, it is divided equally between Edwin's three children, with sub-shares set apart for each of their issue. The Trust is divided into subparts as each beneficiary dies leaving issue until 21 years after the death of the last child or grandchild living at the time of Edwin's death. At that time, the Trust terminates and the principal is distributed. The last member of the family born before Edwin's death was born in 1980. The family estimates the Trust will continue to operate another 70 to 80 years.

---

[1] Where necessary for clarity, we refer to Edwin and his descendants by first names. We intend no disrespect.

3

Paragraph 2.8 of the second amendment to the Trust declaration directs distribution of the net income of the Trust: "Trustee shall from time to time pay all of the net income, in such amounts and proportions (whether equal or unequal) as the Trustee may, in the Trustee's discretion determine, to such one or more members of a class consisting of such beneficiary and such beneficiary's issue, of whatever degree and whenever born, living from time to time during the lifetime of such beneficiary."

Edwin's sons, Bill and Jim, disclaimed their beneficial interests in the Trust, so their shares were divided between their children. Mary retained her beneficial interest.

The sixth amendment modified paragraph 4.1 of the Trust regarding the trustee succession. After Edwin, Bill was to serve as successor trustee, followed by Edwin's accountant, William Stevenson, and finally by San Diego Trust & Savings Bank (San Diego Trust). Paragraph 4.4 of the second amendment, which was not amended, provided any subsequent successor trustee after San Diego Trust "must be a corporation authorized under the laws of the United States or of the State of California or any other state to administer trusts and have total capital, surplus and undivided profits of not less than $20 million."

*Family Agreement Regarding Successor Cotrustees*

When Bill resigned as trustee in 1990, he asked Edwin's accountant and San Diego Trust, to decline to serve as successor cotrustees. The family agreed to a proposal whereby a committee of three family members, one each from each branch of the family, would act jointly as successor cotrustees. Each branch's representative trustee had

4

exclusive control over distributions within his or her branch; no trustee could distribute his or her branch's share to family members who were not in the same branch.

Bill filed an unopposed petition, which the court granted, appointing the first three cotrustees to serve "together, but not alone . . . ." Initially, the three cotrustees were Bill's son, Neal B. Bulen; Jim's daughter, Ann E. Dechairo; and Mary's daughter, Dorothy W. Gaynor—one trustee from each branch of the family.

Over the next 20 years, when one of the cotrustees resigned or died, the remaining cotrustees filed unopposed petitions with the court to appoint a replacement cotrustee, maintaining representation from each branch of the family. With only one or two exceptions, the cotrustees distributed the annual Trust income to the senior class, or generation, of beneficiaries.

*Litigation Regarding Trust Administration*

In 2011, the cotrustees were Jim's son, Edwin H. Bulen (E.H.), Bill's grandson, Christopher Bulen (Chris) and Mary. E.H., Chris, and Mary, filed a petition to modify the Trust under Probate Code section 15409. They asked the court to: (1) eliminate paragraph 4.4, which requires appointment of a corporate trustee; (2) modify the process by which cotrustee vacancies are filled to permit a majority of the senior generation to appoint a person to fill the vacancy rather than require court approval; (3) add a new paragraph to require three family members to serve as cotrustees; and (4) clarify no bond is required for family cotrustees.

Mary's daughter, Dorothy, opposed the petition to modify the Trust contending the petition did not meet the requirements for modification, the proposal did not comply with

5

the original agreement among the family members, and the proposal would disenfranchise contingent beneficiaries of the Trust. Mary resigned as cotrustee and withdrew her participation in the petition for modification.[2]

Dorothy's brother, James Wilmot, along with Dorothy's son, Max Gaynor, and daughter, Michelle Gaynor, joined Dorothy's objection and amended opposition contending the conditions for modification under Probate Code section 15409 did not exist and the petition for modification was filed based on the personal motives of the cotrustees and did not benefit the trust.

After a bench trial, the trial court granted a motion for judgment in favor of the Gaynors on the petition to modify the trust, thereby denying the petition to modify. The court stated, "Article 4 of the trust governs appointment of successor trustees. [¶] Paragraph 4.4 requires appointment of a successor corporate trustee. That provision applies to the present circumstance. This paragraph has never been modified; it has been artfully avoided. [¶] While adherence to what we call 'a family agreement' may have been beneficial, the court makes no findings as to its merits or its deficiencies. [¶] For about 20 years the family has appointed individual successor trustees pursuant to an informal agreement that is contrary to the plain terms of the trust. [¶] The procedures followed and the orders issued did not permanently repeal, modify, or render ineffectual the provisions of paragraph 4.4. To hold otherwise would, among other things, be a violation of the rights of unborn and unrepresented beneficiaries."

---

[2]     Mary, apparently, was in ill health.

6

The court found the Bulens did not establish they are entitled to modify paragraph 4.4 to eliminate the requirement of a corporate trustee under Probate Code section 15409. The court observed the change in circumstance is "a direct result of the deviation from the provisions of the trust by the family. [¶] The use of a provision contrary to the terms of the trust has now resulted in dissension within the family. The trust contains specific provisions designed to avoid dissension of the type present here; that is, over the selection of a successor trustee. [¶] The present controversy, while unfortunate and not necessarily anticipated by the family, was specifically contemplated by the trustor. What the trustor did not anticipate was the failure to follow the trust terms." The court concluded there was insufficient evidence the selection controversy substantially impaired the operation of the Trust and the circumstances were not the type contemplated by Probate Code section 15409 for modification of the Trust.

Prior to trial, the Gaynors filed a petition to remove the Bulens as cotrustees and to appoint a corporate trustee in accordance with the Trust language. The Gaynors provided documents from two financial institutions consenting to act as a successor trustee, First American Trust, FSB (First American), and First Foundation Bank (First Foundation). Both indicated they would open eligibility for annual Trust distributions to beneficiaries of all generations rather than limiting distributions to the senior generation. The petition for appointment of corporate trustee prayed for attorney fees and costs.

The Bulens objected to court appointment of a corporate trustee arguing the Trust allowed a "majority of the income beneficiaries of the trust . . . to change the corporate trustee." The Bulens stated they would resign once the beneficiaries voted to appoint a

7

corporate trustee. The Bulens sent a letter to the beneficiaries providing options for corporate trustees and asking the beneficiaries to vote.

The Gaynors objected to the Bulens' proposal. They contended the terms of the Trust required the court to appoint the first corporate trustee and the language relied upon by the Bulens applies to subsequent changes. The Gaynors also objected to the corporate trustee proposed by the Bulens as unqualified to serve under the terms of the Trust. The Gaynors argued the Bulens should be surcharged to pay the attorney fees and costs incurred by the Trust and the Gaynors.

After months of hearings and several rounds of briefing, including consideration of a report by a guardian ad litem for the minor and unborn beneficiaries of the Trust, the court issued an order indicating the terms of the Trust required the court to appoint the first successor corporate trustee. The court also determined distribution of income by the trustee is to be made in the trustee's discretion. The court appointed First American as the initial successor corporate trustee with First Foundation appointed as the alternative initial successor corporate trustee. Because First American declined to act, First Foundation accepted the appointment and consented to act upon the resignation of the Bulens as cotrustees.

*Gaynors' Motions for Attorney Fees*

Shortly after the court granted the Gaynors' motion for judgment, but before the court appointed the corporate trustee, the Gaynors filed a motion for attorney fees arguing their efforts created a common fund or benefit for the other beneficiaries of the Trust by ending the "senior generation only" distribution, making Trust funds available to junior

8

generations and installing a neutral and professional trustee to protect and preserve Trust assets. Dorothy's brother, James, submitted a declaration stating he was unaware he could receive distributions from the Trust even though he had medical conditions which caused him to have financial hardships. Dorothy submitted a declaration and evidence showing nine or 10 individuals received distributions of approximately $4.7 million since 1995 whereas the beneficiaries from the younger generations received nothing. And in 1999 more than half of the distributions went to the cotrustees themselves. According to Dorothy's analysis, an appointment of a corporate trustee and ending the "senior-generation-only" distribution policy could make available about $1 million more per branch to younger generations than would have been available under the prior policy.

The Bulens opposed the motion arguing the Gaynors are not entitled to fees under the common fund theory because the availability of funds to other generations is speculative. The Bulens submitted form declarations from various beneficiaries, primarily from Jim's branch, indicating they were comfortable with how the family cotrustees administered the Trust in the past, including distributing Trust income to the senior generation, and did not believe the Gaynors should recover fees.

The court denied the motion for fees as premature. The court noted it had not yet appointed the corporate trustee. The court found there is a fund consisting of assets of the Trust and all beneficiaries of the Trust are affected by the judgment. However, the court stated it was unable "at this point in time to determine which beneficiaries will benefit from the appointment of a corporate trustee" and, therefore, the "effect of the judgment upon the [T]rust assets, entitlement to distribution, or distribution is at this time

9

speculative and collateral to the judgment." The court concluded the common fund doctrine did not currently apply, but indicated it was possible the motion for fees should be granted at a later date if it determined the petition resulted in preserving, creating or increasing the common fund.

Once the court appointed the corporate trustee, the Gaynors again filed a motion for attorney fees. The Gaynors argued entitlement to fees based on both the court's equitable powers and the common fund doctrine on the basis they had created a benefit to the Trust by (1) ending the "senior generation only" income distribution policy, (2) removing the opportunity for self-dealing by individual trustees, and (3) securing professional oversight and management of the Trust assets. Dorothy again submitted a declaration with analysis showing an end to the "senior generation only" policy could make more than $1 million in Trust funds available to the second through sixth generations of Bulen descendants who were not previously eligible to receive these funds under the prior family policy.

The Bulens opposed the motion contending attorney fees are not available under the common fund theory because it is speculative whether a common fund will ever be created or preserved. They also disputed the reasonableness of the fees requested.

*Court's Order Awarding Fees*

After consideration of the motion and the evidence, the trial court awarded the Gaynors $260,948.34 in attorney fees. The court found the Gaynors were the prevailing parties. It noted the Gaynors successfully opposed the Bulens' attempt to modify the Trust and obtained an order appointing a corporate trustee, as required by the Trust.

10

They also obtained appointment of one of their nominees as corporate trustee. "In short, they obtained the favorable results that they sought."

The court found "the necessary effect of the relief granted was to preserve or create a fund not previously available to certain trust beneficiaries." The court noted the Trust beneficiaries had for more than 20 years followed a practice of appointing only senior generation beneficiaries to act as successor cotrustees in conflict with the language of the Trust. These cotrustees engaged in a distribution practice that benefited almost exclusively the senior generation beneficiaries. While not specifically interpreting the distribution provisions of the Trust, the court found the practice was contrary to a clear reading of the Trust and the cotrustees "should not have excluded younger beneficiaries and beneficiaries having financial needs."

As a result of the Gaynors' efforts, the court appointed the first corporate trustee, as required by the terms of the Trust. The new trustee stated it would not follow the past practice of distributing income to only senior generation beneficiaries. Rather, all beneficiaries are now eligible for a distribution. The court stated, "[t]hese facts convince the court that, as a result of the success of [the Gaynors] in obtaining the current appointment, younger beneficiaries and needy beneficiaries now have a probability of benefitting from the [T]rust. That is, there will be funds available that were not previously available that the current corporate trustee can distribute to them." Although the court noted the specific amount of the distributions and identities of the beneficiaries

11

are unknown, "the fact is that there are funds available for distribution that were otherwise not available."[3]

The court observed more than $3 million had been distributed to the senior generation over the past 20 years while none of the younger generation had been offered or received anything and some, including "one having severe financial needs had no knowledge of their rights under the [T]rust."

The court concluded its order stating, "[t]his is one of those most meritorious of cases justifying an award of attorneys' fees" under both equitable principles and the common fund theory stating it would be "unfair if [the Gaynors] had to shoulder the entire burden of the fees incurred for the benefit of about [40] other beneficiaries."

The court denied the Gaynors' request for more than $30,000 in fees the court determined were not incurred for the purpose of protecting, preserving or increasing a common fund, such as fees incurred when Dorothy advocated for "adhering to the so-called 'family arrangement' for selection of an individual trustee" and before the Gaynors raised the issue of the need for a corporate trustee.

---

[3]     At oral argument on the fee motion, counsel for the newly appointed corporate trustee, First Foundation, assured the court First Foundation, as trustee, "will distribute income sprinkling among the generations.  The Trust clearly calls for that.  There's no support in the Trust . . . for an older generation only policy of distributions."  The court found this important to "solidify the finding that there's a common fund."  "[A]s I have concluded . . . the [Gaynors] have brought about a benefit to a whole class of people that were previously deprived of the possibility of that benefit by individual trustees who had an interest in the situation and on a prima facie basis may have had a conflict of interest."

DISCUSSION

I

The Bulens challenge the trial court's award of attorney fees based on the common fund doctrine, or its outgrowth, the substantial benefit doctrine. These are nonstatutory equitable exceptions to the American rule requiring parties bear their own fees. (*Pipefitters Local No. 636 Defined Benefit Plan v. Oakley, Inc.* (2010) 180 Cal.App.4th 1542, 1547 (*Pipefitters*).) Both theories are based upon the "inherent equitable powers of the court." (*Serrano v. Priest* (1977) 20 Cal.3d 25, 34 (*Serrano III*).)

The common fund doctrine "is grounded in 'the historic power of equity to permit . . . a party preserving or recovering a fund for the benefit of others in addition to [himself or herself], to recover [his or her] costs, including [his or her] attorneys' fees, from the fund of property itself or directly from the other parties enjoying the benefit.' " (*Serrano III*, *supra*, 20 Cal.3d at p. 35.) Similarly, the principal purpose of the substantial benefit theory "is to avoid enriching one party whose legal action has substantially benefitted the other. Exercising its equitable discretion, the trial court determines whether the interests of justice require those who received a benefit to contribute to the legal expenses of those who secured the benefit." (*Pipefitters*, *supra*, 180 Cal.App.4th at p. 1547.)

"We independently review any legal issue regarding the appropriate criteria for a fee award. But once those criteria are identified, we defer to the trial court's discretion in determining how they are to be exercised. [Citation.] In fashioning an equitable remedy, the trial court is in the best position to determine whether the criteria for a fee award have

13

been met. We will not disturb its judgment on this issue unless we are convinced the court abused its discretion. [Citation.] A trial court abuses its discretion only where its action is clearly wrong and without reasonable basis." (*Pipefitters*, *supra*, 180 Cal.App.4th at pp. 1547-1548.)

## II

The Bulens contend the common fund theory does not apply in this case because there was no actual pecuniary benefit from the litigation in terms of an increase or preservation of Trust assets as a whole. We do not agree.

Under the common fund theory, "when a number of persons are entitled in common to a specific fund, and an action [by a party] for the benefit of all results in the creation or preservation of that fund, such [party] may be awarded attorney's fees out of the fund." (*Serrano III*, *supra*, 20 Cal.3d at p. 34.) "By this means *all* of the beneficiaries of the fund pay their share of the expenses necessary to make it available to them." (*Winslow v. Harold G. Ferguson Corp.* (1944) 25 Cal.2d 274, 277 (*Winslow*).) A review of authorities applying the common fund doctrine in estate matters is helpful.

In *Winslow*, when the corporate entity responsible for administering the trust became insolvent, beneficiaries of a trust commenced judicial action to protect the trust assets and to bring them within judicial administration. The Supreme Court upheld an award of attorney fees stating, "[w]here a lawyer has rendered such valuable service as to make available a fund for a class, even though he appeared for only one claimant, it is equitable that his compensation and expenses should come from the entire fund saved for all classes concerned before it is distributed." (*Winslow*, *supra*, 25 Cal.2d at p. 284.)

14

In *Estate of Reade* (1948) 31 Cal.2d 669, 672, the Supreme Court affirmed the trial court's exercise of discretion in awarding attorney fees to an heir who challenged the administratrix of an estate for failing to list a death benefit she collected as an asset of the estate. The court stated, "a [party] who has succeeded in protecting, preserving or increasing a fund for the benefit of [himself or herself] and others may be awarded compensation from the fund for the services of [his or her] attorney. This is to compel those for whose benefit the action or proceeding was taken to bear their share of the expenses of the litigation; and this rule is equitable and just." (*Id*. at pp. 671-672.) The successful challenge resulted in charging the administratrix for the benefit she collected, which then became available for distribution to the remaining heirs. Since a fund was created or preserved for the benefit of all of the heirs, the court concluded "equitable principles would seem to require that the other heirs bear their proportionate share of the expense of the litigation." (*Id*. at p. 672.)

In *Estate of Lundell* (1951) 107 Cal.App.2d 463, a minor beneficiary of a will objected to the probate court's award of attorney fees for the executors of the will and obtained a reversal of the fee award. The court concluded the minor beneficiary was entitled to her fees based on the common fund doctrine. The court rejected the contention she should not be entitled to fees under the common fund doctrine because the litigation did not increase the fund available to the heirs. The court stated "[t]he important feature is that in both *Estate of Reade*, *supra*, [31 Cal.2d 669] and the present case the fund was preserved whereby each beneficiary received more than he would otherwise have

15

received because of the services rendered by the attorneys for [the minor]." (*Id*. at p. 465.)

In this case, although the overall Trust fund was not increased or preserved through this litigation, the Gaynors made the fund available to a class of beneficiaries who otherwise would not have had access to the fund under the "senior generation only" policy applied by the individual trustees. As a result of bringing administration of the Trust into conformity with the express terms of the Trust and obtaining appointment of a neutral corporate trustee, which will follow the instructions of the Trust for distributions, the court concluded the Gaynors "have brought about a benefit to a whole class of people that were previously deprived of the possibility of that benefit by individual trustees who had an interest in the situation and on a prima facie basis may have had a conflict of interest." For the first time in decades, "younger beneficiaries and needy beneficiaries now have a probability of benefitting from the trust. That is, there will be funds available that were not previously available that the current corporate trustee can distribute to them."

We conclude the court's finding is entirely consistent with the holdings in *Winslow*, *supra*, 25 Cal.2d 274, *Estate of Read*, *supra*, 31 Cal.2d 669, and *Estate of Lundell*, *supra*, 107 Cal.App.2d 463 applying the common fund theory. It is also consistent with authorities holding the probate court "enjoys broad equitable powers over the trusts within its jurisdiction." When litigation benefits the trust, the probate court has discretion to award attorney fees. (*Hollaway v. Edwards* (1998) 68 Cal.App.4th 94, 99 [attorney fees awarded to trustee for successfully defending against removal petition and

16

clarifying her role]; see *Rudnick v. Rudnick* (2009) 179 Cal.App.4th 1328, 1334, fn. 2 ["based on the probate court's equitable powers alone, it has been held that beneficiaries who have incurred attorney fees, either to vindicate their position as beneficiaries [citation] or for the benefit of the trust [citation], are entitled to have those fees paid by the trust"].)

Under the circumstances of this case, the trial court acted well within its equitable discretion to award fees from the Trust. Given our conclusion, we need not reach the issue of whether or not fees are also appropriate under the substantial benefit doctrine.

DISPOSITION

The order awarding attorney fees is affirmed.  Respondents are awarded their costs on appeal.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.