[Civ. No. 52254. Second Dist., Div. One. Apr. 11, 1978.]

HOWARD A. KAPLAN, Plaintiff and Appellant, v.
INDUSTRIAL INDEMNITY COMPANY,
Defendant and Respondent.

**COUNSEL**

Howard A. Kaplan, in pro. per., and Eric Chess Bronk for Plaintiff and Appellant.

Mansell & Arthur and John L. Maier for Defendant and Respondent.

**OPINION**

**LILLIE, J.—** Plaintiff appeals from judgment in an action for declaratory relief and frames this question: When an employer's workers' compensation insurer files a complaint in intervention in the

employee's action against a third party tortfeasor and does no more, and the employee's attorney is solely responsible for effecting a settlement of the action out of which the insurer is reimbursed for benefits paid, is the employee's attorney entitled to fees against the insurer for the benefit conferred by his labors? We answer in the affirmative and reverse the judgment.

The following is reflected in an agreed statement of facts submitted to the trial court. Carlos Gonzalez[1] was an employee of Graphic Center, which was insured against worker's compensation liability by defendant Industrial Indemnity Company (IIC). On May 21, 1974, Gonzalez was involved in an accident and injured within the course and scope of his employment. Gonzalez retained Attorney Howard A. Kaplan, pursuant to a contingent fee agreement, to represent him in claims arising out of the accident. Kaplan filed a legal action against an alleged third party tortfeasor and made a claim against IIC for workers' compensation benefits. IIC thereafter voluntarily paid said benefits.

IIC retained the law firm of Mansell & Arthur to protect its subrogation rights arising from payment of benefits to Gonzalez. On May 21, 1975, this law firm caused to be filed an ex parte petition for leave to intervene, points and authorities, order and complaint in intervention for subrogation interest of workers' compensation carrier (motor vehicle collision) in Gonzalez' third party action; proof of service was subsequently filed. Although it is not so stated, leave to intervene was apparently granted. The complaint in intervention was answered. There was no agreement between Kaplan and IIC to have Kaplan represent it in any manner regarding the injuries suffered by Gonzalez.

Thereafter the insurance carrier for the defendant in the third party action agreed to pay the total sum of $33,403.19 in settlement of the claims of Gonzalez and IIC. The money was to be divided as follows:

"1. The amount payable to Carlos Gonzales ...................... $ 9,752.11

"2. The amount payable to attorney—Howard A. Kaplan as reimbursement for legal cost advanced ................................... 268.85

"3. The amount payable to attorney Howard A. Kaplan as undisputed attorney's fees owed to him by CARLOS GONZALES 6,680.64

---

[1]At various times the record shows this name as Gonzales.

"4. The amount payable to INDUSTRIAL INDEMNITY
COMPANY ........................................................................... 9,989.96

"5. The amount payable to INDUSTRIAL INDEMNITY COMPANY
as reimbursement for its legal costs ............................................. 31.00

"6. The amount payable into a trust fund to be held by the
law firm of MANSELL & ARTHUR for determination by this
Court regarding a claim of attorney, Howard A. Kaplan for
attorney's fees ........................................................................... 6,680.63

"TOTAL AMOUNT OF SETTLEMENT .......................................... $33,403.19"

The point of controversy between Kaplan and IIC was framed thus: "Is attorney, Howard A. Kaplan, entitled to attorney fees in the amount of $6,680.63 by reason of the recovery by INDUSTRIAL INDEMNITY COMPANY OF $9,989.96, plus $31.00 reimbursement for legal cost from the settlement of the above captioned case for the total amount of $33,403.19?"

Kaplan subsequently filed suit for declaratory relief to resolve this issue.[2] It appears from the complaint that Kaplan's claim to this money as his fee is premised on the assertion that he had performed all of the legal services in the prosecution of the third party action and did all of the negotiations leading to settlement, and that under *Quinn v. State of California,* 15 Cal.3d 162 [124 Cal.Rptr. 1, 539 P.2d 761] he was accordingly entitled to an award of fees based on the full amount of the settlement not just the amount recovered by his client Gonzalez. IIC generally and specifically denied the substantive allegations of the complaint.

When the matter came on for hearing IIC moved in limine to exclude evidence beyond that contained in the agreed statement of facts, and the motion was granted. Kaplan offered to prove that the whole extent of IIC's participation in the third party action was the filing of the complaint in intervention, and that it did not participate in any part of the litigation or negotiations leading to settlement. The offer was rejected and judgment for IIC entered.

---

[2] The action was brought by Howard A. Kaplan, a professional corporation. If this fact is significant, it has not been made to appear so.

The judgment may be sustained only if, as a matter of law, Kaplan can have no claim for fees against IIC under the circumstances described.[3] The logic of *Quinn,* relevant statutory language, and the content and purpose of the common fund doctrine point to a reversal of the judgment.

In *Quinn* v. *State of California,* 15 Cal.3d 162 [124 Cal.Rptr. 1, 539 P.2d 761] the injured employee pursued an action against a third party tortfeasor, and his employer's workers' compensation insurer as subrogee filed therein a statutory lien but did not otherwise participate in the litigation on behalf of plaintiff. A judgment was rendered for plaintiff out of which the lien was satisfied, and he moved for an order apportioning his attorney's fee between himself and his employer. The Supreme Court framed the issue, "[W]hether this statute [Lab. Code, § 3856] incorporates the principle that an active litigant (here the worker) may require the passive beneficiary of his efforts (here the employer)[4] to contribute toward the payment for the services of litigant's attorney which produced the recovery." (15 Cal.3d at p. 165). The court held at pages 169-170 that the Legislature had incorporated into the statute the equitable "common fund" doctrine according to which "[O]ne who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs." (P. 167, fn. omitted; *Sprague* v. *Ticonic Bank* (1939) 307 U.S. 161 [83 L.Ed. 1184, 59 S.Ct. 777]; *Central Railroad & Banking Co.* v. *Pettus* (1885) 113 U.S. 116 [28 L.Ed. 915, 5 S.Ct. 387]; *Trustees* v. *Greenough* (1881) 105 U.S. 527 [26 L.Ed. 1157].)

Aside from the fact that the insurer in *Quinn* was not represented by its own counsel there are certain differences between *Quinn* and the instant case that are worthy of note. First, *Quinn* involved Labor Code section 3856,[5] applicable where the third party suit proceeds to judg-

---

[3]There was some confusion at the hearing as to whether the agreed statement of facts precluded the introduction of additional evidence. It is obvious it did not unless the point of law at issue were resolved adversely to Kaplan.

[4]The term "employer" includes the workers' compensation insurer. (Lab. Code, § 3850, subd. (b).)

[5]Section 3856, Labor Code provides: "In the event of suit against such third party:

"(a) If the action is prosecuted by the employer alone, the court shall first order paid from any judgment for damages recovered the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fees which shall be based solely upon the services rendered by the employer's attorney in effecting recovery both for the benefit of the employer and the employee. After the

ment; it is section 3860[6] applicable in case of settlement that pertains here. This difference is inconsequential, however, because the situations must be treated alike. (*Quinn,* 15 Cal.3d at p. 176, fn. 20; see *R. E. Spriggs, Inc.* v. *Industrial Acc. Com.,* 42 Cal.2d 785 [269 P.2d 876].) Also, in *Quinn* the request for fees was made by the employee. The effect of

payment of such expenses and attorney's fees, the court shall apply out of the amount of such judgment an amount sufficient to reimburse the employer for the amount of his expenditure for compensation together with any amounts to which he may be entitled as special damages under Section 3852 and shall order any excess paid to the injured employee or other person entitled thereto.

"(b) If the action is prosecuted by the employee alone, the court shall first order paid from any judgment for damages recovered the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer. After the payment of such expenses and attorney's fee the court shall, on application of the employer, allow as a first lien against the amount of such judgment for damages, the amount of the employer's expenditure for compensation together with any amounts to which he may be entitled as special damages under Section 3852.

"(c) If the action is prosecuted both by the employee and the employer, in a single action or in consolidated actions, and they are represented by the same agreed attorney or by separate attorneys, the court shall first order paid from any judgment for damages recovered, the reasonable litigation expenses incurred in preparation and prosecution of such action or actions, together with reasonable attorneys' fees based solely on the services rendered for the benefit of both parties where they are represented by the same attorney, and where they are represented by separate attorneys, based solely upon the service rendered in each instance by the attorney in effecting recovery for the benefit of the party represented. After the payment of such expenses and attorneys' fees the court shall apply out of the amount of such judgment for damages an amount sufficient to reimburse the employer for the amount of his expenditures for compensation together with any other amounts to which he may be entitled as special damages under Section 3852.

"(d) The amount of reasonable litigation expenses and the amount of attorneys' fees under subdivisions (a), (b), and (c) of this section shall be fixed by the court. Where the employer and employee are represented by separate attorneys they may propose to the court, for its consideration and determination, the amount and division of such expenses and fees."

[6]Section 3860, Labor Code provides:

"(a) No release or settlement under this chapter, with or without suit, is valid or binding as to any party thereto without notice to both the employer and the employee, with opportunity to the employer to recover the amount of compensation he has paid or become obligated to pay and any special damages to which he may be entitled under Section 3852, and opportunity to the employee to recover all damages he has suffered and with provision for determination of expenses and attorney's fees as herein provided.

"(b) The entire amount of such settlement, with or without suit, is subject to the employer's full claim for reimbursement for compensation he has paid or become obligated to pay and any special damages to which he may be entitled under Section 3852, together with expenses and attorney fees, if any, subject to the limitations in this section set forth.

"(c) Where settlement is effected, with or without suit, solely through the efforts of the employee's attorney, then prior to the reimbursement of the employer, as provided in subdivision (b) hereof, there shall be deducted from the amount of the settlement the

the decision was to allow him to shift part of the expenses of the third party suit. Here fees are sought by the employee's attorney who has already been paid pursuant to a contingent fee agreement for services to his client; a decision in his favor will give him additional fees—it will not reduce the costs to Gonzalez of the third party suit. This would seem to be a significant difference, but we are foreclosed from considering it as such. ██ Under the common fund rule "Not only is it established that the litigant is entitled to be compensated for the expense he has incurred in the prosecution of such an action, but there is created in favor of the attorney who renders the service an equitable lien against the fund so preserved. [Citations.]" (*Winslow* v. *Harold G. Ferguson Corp.*, 25 Cal.2d 274, 285 [153 P.2d 714].)[7] Despite these distinctions it would appear that

reasonable expenses incurred in effecting such settlement, including costs of suit, if any, together with a reasonable attorney's fee to be paid to the employee's attorney, for his services in securing and effecting settlement for the benefit of both the employer and the employee.

"(d) Where settlement is effected, with or without suit, solely through the efforts of the employer's attorney, then, prior to the reimbursement of the employer as provided in subdivision (b) hereof, there shall be deducted from the amount of the settlement the reasonable expenses incurred in effecting such settlement, including costs of suit, if any, together with a reasonable attorney's fee to be paid to the employer's attorney, for his services in securing and effecting settlement for the benefit of both the employer and the employee.

"(e) Where both the employer and the employee are represented by the same agreed attorney or by separate attorneys in effecting a settlement, with or without suit, prior to reimbursement of the employer, as provided in subdivision (b) hereof, there shall be deducted from the amount of the settlement the reasonable expenses incurred by both the employer and the employee or on behalf of either, including costs of suit, if any, together with reasonable attorneys' fees to be paid to the respective attorneys for the employer and the employee, based upon the respective services rendered in securing and effecting settlement for the benefit of the party represented. In the event both parties are represented by the same attorney, by agreement, the attorney's fee shall be based on the services rendered for the benefit of both.

"(f) The amount of expenses and attorneys' fees referred to in this section shall, on settlement of suit, or on any settlement requiring court approval, be set by the court. In all other cases these amounts shall be set by the appeals board. Where the employer and the employee are represented by separate attorneys they may propose to the court or the appeals board, for consideration and determination, the amount and division of such expenses and fees."

[7]Discussing the transition from *Trustees* v. *Greenough* (1881) 105 U.S. 527 [26 L.Ed. 1157] where the claim was made by the client to *Central Railroad & Banking Co.* v. *Pettus* (1885) 113 U.S. 116 [28 L.Ed. 915, 5 S.Ct. 387] where it was by the attorney one authority says: "The Court seemed to be cheerfully unaware that it had leaped across a gulf. The *Greenough* case three years before had approved the claim of a *client* for contribution to the litigation costs that he had incurred but under the usual rule could not recover from his losing opponents. The *Pettus* case totally transformed this into an independent right of the *lawyer,* reinforced by lien, to an extra reward so that he might share the wealth of strangers. The lawyer was suddenly thought of as producer of this wealth, though he did nothing more than perform his contract with his own client, and furthermore had been paid by his client in full the sum he had agreed to accept. The only

appellant's position is correct, namely, that if he proves to have been solely responsible for the creation of a fund benefiting IIC he is entitled to a fee based on the benefit conferred. The common fund doctrine generally and *Quinn's* holding that this doctrine is embodied in the worker's compensation law, sections 3856 and 3860, specifically seem to sanction this result.

It must be mentioned, however, that while *Quinn* in general is seemingly supportive of appellant's position, focusing as it does on the active litigant—passive beneficiary circumstance, it also contains a rather direct rejection of the position. In footnote 19, 15 Cal.3d at page 176, the court states: "It follows from the foregoing that the principle of equitable allocation of fees does not confine itself to the situation to which section 3856, subdivision (b), addresses itself; in like manner it will apply to the remainder of the subdivisions of section 3856. Thus when the *employer's* attorney bears the entire litigative burden, the judge on proper motion will make the same reasonable allocation of fee and litigation costs between the employer and the worker, taking into account the service performed for the benefit of each. (§ 3856, subd. (a).) And likewise when the employer and worker arrange to receive representation from the same attorney; the same adjustment of fee in terms of the service rendered to the two clients and apportionment of this fee between those benefitted follows from the statute. (§ 3856, subd. (c).) [¶] *Only when each party separately employs his own attorney does the statute direct the court to relinquish this duty of equitable apportionment, a legislative mandate fully in keeping with the development of a case law in this area.* (§ 3856, subd. (c); see *Estate of Korthe* (1970) 9 Cal.App.3d 572, 577 [88 Cal.Rptr. 465]; Dawson, *Lawyers and Involuntary Clients: Attorney Fees From Funds* (1974) 87 Harv.L.Rev. 1597, 1649-1650.)" (Latter italics added.) While the portion of the footnote underscored by us is dictum and therefore not binding on this court (*Alberton* v. *Superior Court*, 265 Cal.App.2d 812, 817 [71 Cal.Rptr. 553]), it is dictum of a most

explanation for this surprising result must be that the Court was bemused by the thought that the lawyers were the single-handed and primary benefactors. For then and ever since if anyone other than a lawyer had presented such a farfetched claim, no court would be bemused by the appeal to unjust enrichment. Under the usual formula of enrichment through another's loss, it would be difficult indeed for the claimants in the *Pettus* case to contend that they had suffered any loss at all, since they had been paid by their clients the full contract price for their services. Prior to that case, state courts had held that even attorneys had no claim against strangers, nonclients, for the profit from the lawyer's services. This view continued to reappear for some time thereafter in state court decisions. As will be seen shortly it is always held in reserve and is promptly reasserted when there is no 'fund' available to trigger the *Greenough-Pettus* machinery." (Original italics; fns. omitted.) (Dawson, *Lawyers and Involuntary Clients: Attorney Fees From Funds* (1974) 87 Harv.L.Rev. 1597, 1603-1604.) Hereinafter referred to as Dawson.

unequivocal nature. Because, as already noted, sections 3856 and 3860 must be treated alike, the authority cited by the court, if not the dictum itself, must be analyzed to determine if, notwithstanding the strength of appellant's argument as a purely equitable matter, it is answered by statute or case law.

■ Our analysis of section 3860, subdivision (e) and its analogue in section 3856, subdivision (c), viewed in light of the holding of *Quinn,* leads us to conclude that the principle of equitable apportionment of attorneys' fees applies even where both employee and employer retain separate attorneys so long as the resulting fund is produced through the efforts of only one of them. No extended discussion of the code sections is necessary to explain this conclusion; only two observations need be made. The language of both section 3860, subdivision (e) and section 3856, subdivision (c) refers to a situation in which the attorneys of both parties are active in creating the common fund. In the first case it is "Where both the employer and the employee are represented . . . by separate attorneys *in effecting a settlement.*" (Italics added.) In the second, it is "If the action *is prosecuted* both by the employee and the employer . . . and they are represented by separate attorneys . . . ." (Italics added.) Thus where the attorney for each party is active, in prosecuting suit or effecting a settlement, the fees are based solely upon the service rendered in effecting recovery for the benefit of the party represented. Where this is not the case the common fund doctrine incorporated in the other subdivisions of these sections must be employed.

It must be borne in mind that the insurer in *Quinn* was not passive in one sense; it filed its lien against the judgment. Surely its activity would not be any more meaningful if it retained an attorney to file the lien, and the difference between this and filing a complaint in intervention and doing no more is miniscule. None of these steps is active in the sense that matters, namely in contributing to the creation of the fund out of which the insurer will be reimbursed; they simply assure that in the event the fund materializes, the insurer will share in it. If the section were read otherwise the Legislature's incorporation of the common fund doctrine into the statutes would be rendered essentially meaningless. Instead of getting an entirely free ride, as would be true where one party did not retain its own attorney, this party would be obliged to pay only token fare—the cost, say, of having an attorney file a lien or complaint in intervention and no more. If possible a portion of a statute should be construed to be in harmony with the whole. (*California State Disaster*

*Council* v. *Workmen's Comp. App. Bd.,* 11 Cal.App.3d 1083, 1088 [90 Cal.Rptr. 228].) The Legislature could not on the one hand have incorporated the equitable common fund doctrine into the statutes and on the other have permitted a party to avoid by the payment of a nominal fee the impact of these equitable principles.

We agree with the *Quinn* dictum, however, to this extent. Section 3860, subdivision (e) and section 3856, subdivision (c) require the active participation of counsel for both employer and employee before the award of fees is made solely upon the service rendered in effecting recovery for the benefit of the party represented. It is manifest from their language that the sections do not require or permit the court to weigh the respective contributions of each counsel so long as both have been active in the creation of the fund out of which fees are awarded.

*Estate of Korthe,* 9 Cal.App.3d 572 [88 Cal.Rptr. 465], involved an appeal from an order of the probate court granting attorneys' fees from a fund. In a will contest Attorney Rose represented several of 32 beneficiaries under a purportedly revoked will. Most of the remainder of the beneficiaries were represented by various counsel. All counsel entered into contingent fee arrangements with their respective clients. A settlement of the contest was reached, with Rose doing the "lion's share" of the work leading to this resolution which was highly favorable both to his clients and the other beneficiaries. Upon Rose's petition the executor of the estate was ordered to pay him $20,000 as the reasonable value of services rendered in preservation of a common fund. The order awarding fees was reversed. The court explained the bases of the equitable common fund doctrine, citing *Estate of Stauffer,* 53 Cal.2d 124, 132 [346 P.2d 748] as: (1) fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses, (2) correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery, and (3) encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful. It was then reasoned that points one and three were not applicable to the circumstances because the contingent fee agreement between Rose and his clients provided both sufficient incentive to him and assured that his clients would not end up empty handed.

The court also said that there was no unfair advantage to the beneficiaries not represented by Rose because they, or substantially all of them, sought counsel and joined in the litigation.[8] It was conceded, however, that there might be some doubt on this point. "We appreciate that the record here indicates—and it is not really disputed—that Mr. Rose did the lion's share of the work which led to the highly favorable settlement with Barrett. It may therefore seem inequitable that he should get more or less the same fee from his clients as the other counsel presumably will get from theirs. That, however, is a situation in which attorneys find themselves many times and it is up to them to protect themselves by arrangements with other counsel. Take, for example, an attorney who represents one plaintiff out of many who make claims after a common disaster, such as the crash of a commercial airliner. He spends hundreds of hours preparing a highly complicated case and presents it successfully in a consolidated trial. Still, unless he has an agreement with other counsel, he must look to his own client for his fee." (Fn. omitted; *Estate of Korthe,* 9 Cal.App.3d 572, 576-577 [88 Cal.Rptr. 465].)[9]

It is a matter of no little interest that in several recent cases involving the crash of a commercial airliner, federal courts have reached conclusions contrary to that predicted in *Korthe.* (*Vincent* v. *Hughes Air West, Inc.* (9th Cir. 1977) 557 F.2d 759, 771-772; *In re Air Crash Disaster at Florida Everglades* (5th Cir. 1977) 549 F.2d 1006, 1017-1020; *Doherty* v. *Bress* (D.C. Cir. 1958) 262 F.2d 20, cert. den., 359 U.S. 934 [3 L.Ed.2d 636, 79 S.Ct. 649]; and see *Stancil* v. *United States* (E.D.Va. 1061) 200 F.Supp. 36, 46-47.) Appreciated in these cases was that when the request for fees is made by the attorney and not by his client different principles, unique to the situation (see fn. 7, *ante*) apply. The equitable bases of the common fund rule discussed in *Stauffer* apply to the action by the client; when the suit is by the attorney there is no complaint that the client's recovery has been unfairly diminished, and one may assume that the attorney has already been paid for the services rendered to this client. He

[8]The court also expressed the concern that should the attorneys for all the various parties make claims like that of Rose there might be the danger that the recovery of all beneficiaries would be consumed or sharply curtailed by the fees, that if the award to Rose were upheld on appeal the estate liability for fees appeared unlimited. It might be observed that the limitation on fees from the fund is what it is in all common fund cases—a reasonable amount to be determined in the discretion of the trial court, and that inasmuch as Rose had done the lion's share of the work leading to preservation of the fund the reasonable amount of total attorneys' fees would likely not be significantly higher than the amount awarded to Rose alone.

[9]At least in the workers' compensation context, where as is often the case the insurer's subrogation rights amount to little more than a rider on the employee's third party action, it might be questioned what incentive there is for the insurer's attorney to reach agreement with the employee's attorney on the question of fees.

is asking, however, to be paid also for the benefits these services have conferred on others; if these others have retained counsel it may be that they are not getting a free ride, but if their counsel have not actively participated in labors leading to creation of the fund, counsel may be getting a free ride.

■ "The award ,of fees under the equitable fund doctrine is analogous to an action in quantum meruit: the individual seeking compensation has, by his actions, benefited another and seeks payment for the value of the service performed. Understood in this way, there are two possible 'causes of action' that may be urged as the basis for award of attorneys' fees. One of these 'causes' belongs to the plaintiff who brought the underlying suit. His claim is that by instituting the suit he has performed a service benefiting other class members. The reasonable value of that service is measured by the expenses incurred by the plaintiff on behalf of the class. . . . [¶] The second 'cause of action' for award of attorneys' fees under the equitable fund doctrine belongs to the attorney. The attorney's claim is that his conduct of the suit conferred a benefit on all the class members, that one or more class members has agreed by contract to pay for the benefit the attorney conferred upon him, and that the remaining class members should pay what the court determines to be the reasonable value of the services benefiting them." (*Lindy Bros. Bldrs., Inc. of Phila.* v. *American R. & S. San. Corp.* (3d Cir. 1973) 487 F.2d 161, 165.)

To the extent that *Korthe* may be read to mean that under the common fund doctrine an award of fees from the fund to the active attorney is impermissible as against claimants to the fund whose attorneys were, rather than passive, just comparatively less active in the proceedings leading to protection or creation of the fund it is consistent with the result we deem called for by the workers' compensation statutes; we have no occasion to consider it as a more general proposition. (But see *Grant* v. *Hartman Ranch Co.,* 193 Cal.App.2d 497, 502 [14 Cal.Rptr. 531]; *Mann* v. *Superior Court,* 53 Cal.App.2d 272, 281 [127 P.2d 970].)

There is language in cases other than *Korthe* that supports respondent's position that by retaining its own counsel it is ipso facto excused from compensating Kaplan even assuming it is a passive beneficiary of this efforts. In some cases (e.g., *Estate of Stauffer,* 53 Cal.2d 124, 133-134 [346 P.2d 748]) this is pure dictum, and in others (e.g., *Johnson* v. *L.D.S. Trucking Co.,* 254 Cal.App.2d 496, 500 [62 Cal.Rptr. 501]; *Eldridge* v. *Truck Ins. Exchange,* 253 Cal.App.2d 365, 367 [61 Cal.Rptr. 347]; *Bosch* v. *Standard Oil Co. of Cal.,* 193 Cal.App.2d 426, 429-430 [14 Cal.Rptr.

247]; *Estate of Bullock,* 133 Cal.App.2d 542, 547-548 [284 P.2d 960][10]), it appears upon analysis that there was active participation by other counsel and the significance of this fact is implicitly embodied in the more sweeping language of the opinion. The simple fact is that there is authority for both sides of the question, whether explicit or inferential (see *Hone* v. *Climatrol Industries, Inc.,* 59 Cal.App.3d 513, 530, 531 [130 Cal.Rptr. 770]) in varying contexts. (See 3 Newberg on Class Actions (1977) § 6980a, p. 1278 et seq.; Annot. (1976) 74 A.L.R.3d 910, Annot. (1937) 107 A.L.R. 749.) Indeed, if the right of an attorney for an intervening party to claim fees from a common fund is regarded as the flip side of the question whether the intervening party may resist assessment of fees for the attorney of the original active plaintiff, there is California authority directly supporting appellant's claim for fees. (*Winslow* v. *Harold G. Ferguson Corp.,* 25 Cal.2d 274, 284-286 [153 P.2d 714]; *Grant* v. *Hartman Ranch Co.,* 193 Cal.App.2d 497, 502 [14 Cal.Rptr. 531]; *Mann* v. *Superior Court,* 53 Cal.App.2d 272, 281 [127 Cal.Rptr. 970].)

 Should appellant succeed in proving that it was solely as a result of his efforts that the settlement fund was created he will be entitled to an award of reasonable fees based on the benefit conferred on IIC. What is a reasonable fee must be determined by the trial court. Appellant's contingency agreement while perhaps relevant does not control this determination. (See Dawson, 87 Harv.L.Rev. 1597, 1608 and cases cited.) We do not doubt that it is within the power of the court to assure that IIC will not pay twice for the benefit it has received because of its fee arrangement with its retained counsel.[11] (See 3 Newberg on Class Actions (1977) § 6960c, p. 1240; *Farmington Dowel Products Co.* v. *Forster Mfg. Co.* (1st Cir. 1970) 436 F.2d 699.)

The judgment is reversed.

Wood, P. J., and Hanson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 9, 1978.

---

[10]*Estate of Bullock* was heavily relied on in the *Korthe* case where it was decided that the opinion regarding an award of fees from a fund where other claimants also have retained counsel is not dictum. On this matter *Grant* v. *Hartman Ranch Co.,* 193 Cal.App.2d 497 501-502 [14 Cal.Rptr. 531] differs with *Korthe.*

[11]The record does not indicate the nature of IIC's fee agreement with Mansell & Arthur.