[No. B043392. Second Dist., Div. Four. Dec. 13, 1990.]

PETER STEINBERG et al., Plaintiffs, v.
ALLSTATE INSURANCE COMPANY, Defendant and Appellant;
LILLICK & McHOSE et al., Movants and Respondents.

**COUNSEL**

Zajic & Zajic and Helen Crawford Zajic for Defendant and Appellant.

Lillick & McHose, Kenneth R. Chiate, John R. Cadarette, Fadem, Berger & Norton, Richard D. Norton and Marlena J. Mouser for Movants and Respondents.

## OPINION

**GOERTZEN, J.**—Appellant Allstate Insurance Company (appellant) appeals from two orders of the superior court ordering payment of attorney fees from appellant's subrogation recovery to the law firms of Lillick & McHose (Lillick) and Fadem, Berger & Norton (Fadem). Lillick and Fadem represented plaintiffs/homeowners in the Big Rock Mesa Landslide megalitigation. Appellant was the insurer of some of the homeowners. For the reasons discussed below, we affirm.

### FACTS

The underlying actions arose out of a major landslide in the Big Rock Mesa area of Malibu, California, which caused substantial damage to many homes and severely depreciated the market value of homes in the landslide area. The homeowners, represented by Lillick and Fadem, brought various actions against governmental entities, including the County of Los Angeles (County) and the State of California Department of Transportation (Caltrans). Lillick and Fadem also filed claims against numerous homeowners' insurance carriers, including appellant, seeking recovery under their policies for landslide damages sustained by the homeowners. After lengthy negotiations, appellant settled the insurance claims with all of its Big Rock insureds, who were represented by Lillick and Fadem. As a result of payments to these insureds, appellant had a subrogation claim on moneys received from third party tortfeasors for landslide damage to the affected properties.

Appellant retained the law firm of Zajic & Zajic (Zajic) to pursue its subrogation rights in the consolidated cases. Appellant agreed to pay Zajic 25 percent of any amount recovered in a contingency fee contract, dated August 21, 1985.

No one disputes the tremendous number of hours and herculean efforts expended by Lillick and Fadem during their representation of the plaintiffs through 3 trials,[1] the filing of numerous complaints on behalf of 240 plaintiffs, responding to numerous demurrers, filing and responding to motions for summary judgment, initiating and responding to hundreds of discovery

---

[1] The Hansch suit in the summer of 1985 resulted in a verdict in favor of the plaintiffs; the Koch-Ash et al. suit in the summer of 1986 went to trial against Caltrans only and resulted in the jury finding Caltrans liable, and the parties entered into settlement agreement, providing that Caltrans would pay an unconditional sum of $25 million and guaranteed an additional $50 million recovery in the remaining government litigation; the Gordon et al., suit in December 1988, was suspended pending "global settlement" negotiations.

requests, taking or attending over 100 depositions, and reviewing and digesting hundreds of thousands of documents.

The consolidated cases were concluded by way of a $96.8 million "Global Settlement Agreement."

## PROCEDURAL HISTORY

Subsequently, Lillick and Fadem moved to collect attorneys' fees from appellant's subrogation recovery. Lillick sought a contingency fee of 20 percent of all money recovered; Fadem sought a contingency fee of 30 percent of all money recovered.

Zajic objected, claiming it was entitled to be compensated on a 25 percent contingency fee basis for the recovery of all moneys paid to appellant out of the common settlement fund in satisfaction of appellant's subrogation rights.

The trial court granted Lillick's and Fadem's motions and denied Zajic's.[2] Among other things, the court found "that the firm of Zajic & Zajic did not 'actively participate' in the production of the 'common settlement fund.'"

## DISCUSSION

Appellant contends the court's orders must be reversed because the court erred as a matter of law when it applied an incorrect test to determine

---

[2] In pertinent part, the court's May 18, 1989, Lillick attorney fee order provided: "The Court grants both [Lillick] and [Fadem] motions in their entirety. [¶] The Court finds that the 'common settlement fund' out of which Allstate Insurance Company has received and will receive monetary benefits in satisfaction of its subrogation rights, was produced through the efforts of the Lillick and Fadem law firms. For purposes of this Order, 'common settlement fund' refers to money paid as a result of the Big Rock Mesa Landslide Litigation Release and Sliding Scale Recovery Settlement Agreement dated July 31, 1987 and the Big Rock Mesa Landslide Litigation Settlement Agreement dated February 9, 1989. [¶] The Court finds that the firm of Zajic and Zajic did not 'actively participate' in the production of the 'common settlement fund.' [¶] The Court has also taken Judicial Notice of the literally hundreds of pleadings and discovery materials filed by the Lillick and Fadem offices in these consolidated cases, which are part of the massive court records and/or have been filed with the depository established by the Court for this litigation. The Court also takes Judicial Notice of the extensive efforts put forth by the Lillick and Fadem firms throughout the course of the past several years in pursuing the *Hansch*, *Koch-Ash*, and *Gordon* trials, and attending the innumerable hearings, motions, and status conferences with this Court. This Court was assigned the Big Rock Mesa Litigation case on July 12, 1984. [¶] Good cause having been shown therefor, it is ordered that Lillick is entitled to, and Allstate Insurance Company shall pay to Lillick an attorneys' fee of 20% on all monies paid to Allstate Insurance Company out of the 'common settlement fund.'"

On May 24, 1989, the court entered a similar order, ordering Allstate to pay Fadem an attorneys' fee of 30 percent on any recovery Allstate received from its subrogation claim.

whether the Zajic firm was entitled to its attorney fees. Appellant also asserts that the doctrine of equitable apportionment should not have been applied in this case. For the reasons discussed below, we affirm both orders.

We begin with a brief explanation of the doctrine of equitable apportionment. ■ As summarized in *Quinn* v. *State of California* (1975) 15 Cal.3d 162 [124 Cal.Rptr. 1, 539 P.2d 761], the doctrine of equitable apportionment provides that "one who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs." (*Id.*, at p. 167.) The doctrine does not apply, however, when each party has retained counsel, and each counsel has actively prosecuted the case or actively participated in creation of the settlement. (*Kaplan* v. *Industrial Indem. Co.* (1978) 79 Cal.App.3d 700, 708-709 [145 Cal.Rptr. 219].) The question of "active participation" by a particular counsel is one of fact for the trial court. (*Walsh* v. *Woods* (1986) 187 Cal.App.3d 1273, 1278 [232 Cal.Rptr. 629].)

■ *Application of the Correct Test.* Appellant urges that the court committed an error of law because it applied the incorrect legal standard. Appellant claims that the court impermissibly applied a balancing test, weighing the amount of work performed by Lillick and Fadem against the work done by Zajic, rather than considering whether Zajic had actively participated in creation of the fund. As the record clearly belies this contention, we reject it.

The transcript of the hearing on this matter reveals that the court repeatedly articulated the standard it was applying to make its determination. At the commencement of the hearing, the court commented: "[I]t would appear that the principle of equitable apportionment of attorney fees applies where both employee and employer or an insured and a subrogating insurance carrier—that's the situation we have here—retain separate attorneys so long as the resulting fund is produced through the efforts of only one of them. Further, an employee's attorneys are entitled to attorney fees based on the amount of the comp lien unless the attorney for the lienholder—and in our case it would be the attorney for the subrogating insurance carrier—'actively participated' in prosecuting this suit if it went to trial or in this instance . . . actively participated in creating the settlement fund. Thus[,] it would appear[,] boiling it all down[,] is what active participation by the Zajic firm contributed to the common settlement fund out of which Allstate will make its subrogation recovery."

Later in the hearing, the court reiterated this standard at least five times. There is no doubt in our collective mind that the court understood the

standard and applied it accordingly. To conclude otherwise would require us to find that the court somehow lacked the ability to comprehend the meaning of the words it used. The court spoke clearly and without hesitation or confusion. It understood and applied the standard correctly.

Appellant objects, citing us to instances when the court indicated that it had written a list of the numerous actions taken by Lillick and Fadem in the prosecution of the action and in the formulation of the common settlement fund and of the actions taken by the Zajic firm. While it is true that the court did use such information in reaching its decision, it did so only as a tool to determine whether, in fact, the involvement of the Zajic firm amounted to *active participation in creation of the settlement fund*. This determination cannot be made in a vacuum. The court was required to look at Zajic's level of participation. Certainly relevant to this inquiry is the work done which actually resulted in the creation of the $97 million settlement fund.

*Applicability of the Doctrine of Equitable Apportionment.* Convinced of the righteousness of its first argument, appellant next contends that the doctrine of equitable apportionment has no application here. Hence, rather than the remand which would have been required had we been convinced by the first argument, appellant asserts that we should vacate the orders and enter an order awarding the disputed attorney fees to Zajic. This contention is without any merit.

Appellant reasons that the doctrine should not be applied in the instant case because appellant was not a "passive participant" in the creation of the settlement fund and to permit the doctrine's application would produce inequitable results.

Appellant's assertion that it was not a "passive" beneficiary but one that actively participated in the creation of the fund is essentially a request that we reweigh the evidence already considered by the trial court. As noted above, the determination of whether counsel has actively participated in the prosecution of the case or actively participated in the creation of the settlement is one of fact for the trial court. (*Walsh* v. *Woods, supra,* 187 Cal.App.3d 1273.) Appellant concedes that Lillick and Fadem were the undisputed leaders in procuring the settlement. Appellant argues, however, that the pertinent test is: Did it "minimally participate in the case?" As it did minimally participate in the case, appellant asserts that the doctrine of equitable apportionment should not have been applied. Besides impermissibly asking us to reweigh the evidence considered by the trial court, this contention is based on an incorrect standard. The correct standard does not

ask whether counsel "minimally participated" in the case but rather whether counsel "actively participated" in the *creation of the settlement fund.*

Here, the court took judicial notice of "literally . . . thousands" of documents which were part of the court files and had before it declarations from lead counsel for both the County and Caltrans. Caltrans counsel stated that Caltrans entered into the settlement agreement with the Lillick and Fadem clients as a result of the verdicts in the Hansch and Koch-Ash cases; and that nothing done by Zajic in any way contributed to the Caltrans settlement agreement. Counsel for the County stated that the county entities' decision to enter into the Global Settlement Agreement was "a direct result of the efforts undertaken by the Lillick and Fadem law firms" and that nothing Zajic did "in connection with this litigation was in any way a factor in the County Entities' decision to enter into the Global Settlement Agreement." In addition the court had been involved with the case for over five years and made a specific finding that it did not find Zajic to be at all familiar. Even this minimal summary of the record leads us to conclude that the doctrine of equitable apportionment correctly was applied.

██ Appellant protests, contending that two inequitable results will occur—payment by appellant of attorneys' fees to firms which could not ethically represent it in the underlying action and a "chilling effect" on future subrogation actions. Appellant's first "inequitable result" is one common to all cases where the doctrine of equitable apportionment is applied. The *Quinn* case involved a workers' compensation insurance carrier's subrogation claim on proceeds recovered by an employee from a third party tortfeasor. There, the insurer sat back while the employee and his attorney actively litigated the case against the third party tortfeasor, which resulted in a substantial judgment. The court held that the insurer was required to pay attorney fees out of its subrogation recovery. (*Quinn* v. *State of California, supra,* 15 Cal.3d at pp. 173-176.) There is no doubt that in *Quinn* the attorney for the worker would not ethically have been permitted to represent the insurer in the underlying action for the same reasons argued by counsel here. Yet, the Supreme Court held that the doctrine of equitable apportionment did apply.

Appellant's second concern that a "chilling effect" on subrogation actions will result is without foundation in fact. The *Quinn* case was decided in 1975, and there does not appear to have been any diminution in the number of subrogation actions filed in superior court.

## DISPOSITION

The orders awarding attorney fees to Lillick and Fadem are affirmed.

George, Acting P. J., and Epstein, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 27, 1991.