Opinion
 

 ELIA, J.
 

 Xerox Corporation appeals the trial court’s order granting attorney’s fees to respondents Thomas E. and Mary Beth Kavanaugh. We conclude that Xerox was not a passive beneficiary of the litigation and therefore the award of attorney’s fees pursuant to Labor Code section 3856
 
 [1]
 
 was improper. The judgment is reversed.
 

 Facts and Procedural Background
 

 On May 23, 1984, Thomas Kavanaugh was involved in an automobile accident in which he sustained injuries. At the time of the accident, Kavanaugh was acting in the course and scope of his employment for Xerox Corporation.
 

 On December 24, 1984, Kavanaugh and his wife, Mary Beth Kavanaugh, filed a complaint seeking damages. Named as defendants were the City of Sunnyvale, and the drivers and/or vehicle owners involved in the accident. On May 20, 1985, Xerox Corporation filed a complaint in intervention seeking reimbursement of workers’ compensation benefits paid to Kavanaugh.
 

 During the prosecution of the lawsuit, counsel for Xerox attended approximately 16 depositions, responded to 2 requests for production of documents, and propounded its own request for production of documents. In addition, Xerox designated expert witnesses to be called at trial, including an expert accident reconstructionist to testify regarding issues of liability. Xerox withdrew this witness prior to trial because it concluded that the witness “would just muddy the water.” Counsel for Xerox also attended a mandatory settlement conference, and filed a settlement conference statement with the court.
 

 Trial commenced on October 17, 1989. At trial, counsel for Xerox was present and participated, albeit minimally. Counsel for Xerox participated in voir dire, and presented an opening statement and a closing argument.
 
 *569
 
 Counsel for Xerox questioned several witnesses during trial, although the questioning was very brief.
 

 On the ninth day of trial, the matter was submitted to the jury. Shortly thereafter, one defendant was dismissed with prejudice. The remaining defendants, except for the City of Sunnyvale, agreed to settle the case. According to the terms of the settlement, which was approved by the court, Mary Beth Kavanaugh would receive $15,000, waive costs, and provide releases of all claims against these defendants. Thomas Kavanaugh would receive $15,000, with Xerox Corporation waiving all claims thereto. The settling defendants agreed to pay Kavanaugh and Xerox their proportionate share of costs and disbursements.
 

 On November 11, 1989, the jury reached a verdict. The special verdict declared the City 25 percent liable, the settling defendants 65 percent liable, and Thomas Kavanaugh 15 percent liable. Damages of $1,968,629.70 were awarded to Thomas Kavanaugh, $25,000 to Mary Beth Kavanaugh, and $419,179.87 to Xerox on its lien.
 

 Thereafter, the Kavanaughs filed a motion seeking to recover attorney’s fees out of Xerox’s $419,179.87 recovery based upon Labor Code section 3856 and the “common fund” doctrine. On May 4, 1990, the court issued its order awarding the Kavanaughs’ counsel 15 percent of the common fund as attorney’s fees.
 

 In the court’s order, it stated: “In determining whether the intervenor was ‘active’ in the sense referred to by the case law, one must look to the specifics of the case at bar rather than to cases in a generic sense, [¶] The subject action involved difficult questions of liability and required substantial expenditures, not only of time, but also of money. Intervenor devoted much of the former but little of the latter. In reality, intervenor had a relatively small investment in the case compared to that of plaintiff’s counsel. In the overall sense, considering the costs advanced by plaintiff’s counsel, it is difficult to say that intervenor was ‘active’ in the litigation, [f] Giving due credit to intervenor for the degree of activity it did in fact show, the Court awards fifteen percent of the common fund as plaintiff counsel’s attorney fee.”
 

 Xerox appeals from the trial court’s determination.
 

 Discussion
 

 Xerox argues that the trial court erred in awarding attorney’s fees to the Kavanaughs. Before addressing this argument, we first set out the applicable law.
 

 
 *570
 
 The “American rule" provides that parties to litigation should pay their own attorney’s fees.
 
 (Gray
 
 v.
 
 Don Miller & Associates, Inc.
 
 (1984) 35 Cal.3d 498, 504 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763];
 
 Covenant Mutual Ins. Co.
 
 v.
 
 Young
 
 (1986) 179 Cal.App.3d 318, 321 [225 Cal.Rptr. 861].) In California, the rule is embodied in Code of Civil Procedure section 1021.
 
 (Davis
 
 v.
 
 Air Technical Industries, Inc.
 
 (1978) 22 Cal.3d 1, 5 [148 Cal.Rptr. 419, 582 P.2d 1010].) Code of Civil Procedure section 1021 provides, “Except as attorney’s fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided.”
 

 An exception to this rule is the common fund or equitable apportionment doctrine. In general, this doctrine provides that “one who expends attorneys’ fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs.”
 
 (Quinn
 
 v.
 
 State of California
 
 (1975) 15 Cal.3d 162, 167 [124 Cal.Rptr. 1, 539 P.2d 761], fn. omitted.)
 

 Workers’ compensation cases may give rise to situations justifying equitable apportionment of attorney’s fees. For example, if an injured worker files suit against the third party tortfeasor and recovers damages, the worker’s employer is entitled to receive out of such recovery the workers’ compensation benefits that the employer has already paid. (§ 3856;
 
 Quinn
 
 v.
 
 State of California, supra,
 
 15 Cal.3d at p. 167.) The worker’s employer is entitled to such recovery even if the employer did not assist in the prosecution of the lawsuit. Thus, if the injured worker prosecutes the lawsuit alone, and recovery is obtained, the employer is able to receive the benefits of the litigation without sharing any of the burdens of its prosecution.
 

 Section 3856 addresses this inequity by incorporating the common fund doctrine into the statutory scheme. Section 3856, subdivision (b) provides, “If the action is prosecuted by the employee alone, the court shall first order paid from any judgment for damages recovered the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney’s fee which shall be based solely upon the services rendered by the employee’s attorney in effecting recovery both for the benefit of the employee and the employer.”
 

 
 *571
 
 Section 3856, subdivision (a) also applies the common fund doctrine to situations where the lawsuit is prosecuted solely by the employer.
 
 [2]
 
 However, if both employer and employee prosecute the action, then the common fund doctrine is inapplicable. As stated in section 3856, subdivision (c), “If the action
 
 is prosecuted both by the employee and the employer,
 
 in a single action or in consolidated actions, and they are represented by the same agreed attorney or by separate attorneys, the court shall first order paid from any judgment for damages recovered, the reasonable litigation expenses incurred in preparation and prosecution of such action or actions, together with reasonable attorney’s fees based solely on the services rendered for the benefit of both parties where they are represented by the same attorney, and where they are represented by separate attorneys, based solely upon the service rendered in each instance by the attorney in effecting recovery for the benefit of the party represented.” (Italics added.)
 

 Section 3856 was interpreted by the California Supreme Court in
 
 Quinn
 
 v.
 
 State of California, supra,
 
 15 Cal.3d 162. The worker in
 
 Quinn
 
 filed suit against the third party
 
 tortfeasor.
 
 After paying the workers’ compensation benefits, the employer’s insurance carrier filed a section 3856 lien against any judgment that might ensue. The employer’s insurance carrier did not participate further in the litigation. The worker was awarded damages amounting to $91,314.99. Urging that his attorney had performed all the work leading to recovery, the worker then moved for an order apportioning his attorney’s fees between himself and his employer.
 
 (Id.
 
 at p. 166.) The motion was denied.
 

 The Supreme Court reversed and remanded the case to the trial court.
 
 Quinn
 
 held that section 3856 incorporated “the principle that an active litigant (here the worker) may require the passive beneficiary of his efforts (here the employer) to contribute toward the payment for the services of litigant’s attorney which produced the recovery.” (15 Cal.3d at p. 165.)
 

 In reaching its result, the court reasoned that both the language of section 3856, as well as its legislative history, indicated that the statute incorporated the doctrine of equitable apportionment. The court also noted that it was required to construe section 3856 to secure maximum benefits to the employee. (15 Cal.3d at p. 170, citing § 3202.)
 

 
 *572
 
 Finally, the court rejected the contention that equitable apportionment of attorney’s fees constituted a “double recovery” for the employee. The court stressed that the judgment recovered by the employee was subject to claims not only for the reimbursement of benefits, but also for the reimbursement of the legal fees owed. Moreover, the fact that the employee could recoup fees from the employer did not mean that the employee received extra workers’ compensation benefits; it only meant that the employee’s attorney obtained compensation for legal services. (15 Cal.3d at p. 174.)
 

 After determining that the fees should be apportioned, the court remanded the case to the trial court, and ordered that the trial court “should proceed first to calculate a reasonable attorney’s fee, a fee which reflects the total services rendered to
 
 both
 
 beneficiaries of the recovery. Having fixed the fee, the court must then make a reasonable apportionment of it between the parties benefitted by the recovery.” (15 Cal.3d at p. 175, italics in original, fns. omitted.)
 

 In a footnote, the court reasoned,
 
 “Only when each party separately employs his own attorney does the statute direct the court to relinquish this duty of equitable apportionment, a legislative mandate fully in keeping with the development of a case law in this area.”
 
 (15 Cal.3d at p. 176, fn. 19, italics added.)
 

 Cases decided after
 
 Quinn
 
 have struggled to determine when the doctrine of equitable apportionment should be applied. (See e.g.,
 
 Kaplan
 
 v.
 
 Industrial Indem. Co.
 
 (1978) 79 Cal.App.3d 700 [145 Cal.Rptr. 219];
 
 Walsh
 
 v.
 
 Woods
 
 (1982) 133 Cal.App.3d 764 [184 Cal.Rptr. 267];
 
 Walsh
 
 v.
 
 Woods
 
 (1986) 187 Cal.App.3d 1273 [232 Cal.Rptr. 629];
 
 Steinberg
 
 v.
 
 Allstate Ins. Co.
 
 (1990) 226 Cal.App.3d 216 [277 Cal.Rptr. 32].) The problem arises when both the employee and employer (or employer’s insurance carrier) retain separate attorneys, but one of the attorneys is more active than the other in securing recovery.
 

 For example, in
 
 Kaplan
 
 v.
 
 Industrial Indem. Co., supra,
 
 79 Cal.App.3d 700, both the worker and the employer’s insurance carrier retained separate attorneys. The lawsuit against the third party tortfeasor was filed by the worker. The employer’s insurance carrier filed a complaint in intervention.
 
 (Id.
 
 at p. 703.)
 

 The matter was ultimately settled. The worker’s attorney claimed he was responsible for obtaining the settlement and therefore was entitled to attorney’s fees based upon the entire settlement amount, rather than just the amount recovered by the worker. (79 Cal.App.3d at p. 704.)
 

 
 *573
 
 The appellate court agreed. In reaching this conclusion,
 
 Kaplan
 
 discussed footnote 19 in
 
 Quinn
 
 v.
 
 State of California, supra,
 
 15 Cal.3d at page 176.
 
 Kaplan
 
 concluded the
 
 Quinn
 
 footnote meant the equitable apportionment principle applied “even where both employee and employer retain separate attorneys so long as the resulting fund is produced through the efforts of only one of them.” (79 Cal.App.3d at p. 709.)
 

 The court further stated, that “[i]t must be borne in mind that the insurer in
 
 Quinn
 
 was not passive in one sense; it filed its lien against the judgment. Surely its activity would not be any more meaningful if it retained an attorney to file the lien, and the difference between this and filing a complaint in intervention and doing no more is miniscule. None of these steps is active in the sense that matters, namely in contributing to the creation of the fund out of which the insurer will be reimbursed; they simply assure that in the event the fund materializes, the insurer will share in it.” (79 Cal.App.3d at p. 709.)
 

 Another case considering the applicability of equitable apportionment was
 
 Walsh
 
 v.
 
 Woods, supra,
 
 133 Cal.App.3d 764
 
 (Walsh
 
 I). In
 
 Walsh I,
 
 the worker moved for attorney’s fees, arguing his attorney was solely responsible for the judgment recovered. The employer’s insurance carrier objected, claiming it had been represented by separate counsel and that counsel had “actively participated” in prosecuting the litigation against the third party tortfeasor.
 
 (Id.
 
 at p. 766.)
 

 Although the trial court awarded the worker his attorney’s fees, the appellate court reversed and remanded. In so doing,
 
 Walsh I
 
 emphasized that the trial court’s finding that the judgment “resulted solely from the efforts of plaintiff’s counsel sheds no light on whether intervener’s counsel actively participated or merely undertook a passive role in the litigation. On remand, should respondent succeed in proving that the recovery effected was
 
 solely
 
 the result of the
 
 active
 
 participation of his own counsel, he would then—but not otherwise—be entitled to an award of reasonable fees based upon the benefit thus conferred upon intervener.” (133 Cal.App.3d at p. 768, citing
 
 Kaplan
 
 v.
 
 Industrial Indem. Co., supra,
 
 79 Cal.App.3d at p. 713, italics in original.)
 

 In a footnote,
 
 Walsh I
 
 stated that “intervener’s counsel did attend some depositions, consulted with plaintiff’s experts before trial, presented evidence relating to compensation benefits, participated in cross-examination and delivered a closing argument.
 
 If such activities were found to be true, it would constitute ‘active participation’ as a matter of law foreclosing apportionment of attorney’s fees.”
 
 (133 Cal.App.3d at p. 768, fn. 1, italics added.)
 

 
 *574
 
 Accordingly,
 
 Walsh I
 
 remanded the case so the trial court could determine whether intervener had actively participated in the litigation. Upon remand, the trial court concluded that the worker’s attorney had been primarily responsible for the recovery but also concluded that intervener’s counsel had actively participated in the lawsuit, “albeit minimally.” Thus, the trial court denied the worker attorney’s fees.
 

 The appellate court affirmed in
 
 Walsh
 
 v.
 
 Woods, supra,
 
 187 Cal.App.3d 1273
 
 (Walsh II). Walsh II
 
 rejected the worker’s argument that his attorney should receive fees because he was the “sole” cause of recovery. The court emphasized that the common fund doctrine applied when there was a
 
 passive
 
 beneficiary and therefore the question was not simply which attorney had a comparatively greater degree of participation.
 
 (Id.
 
 at p. 1279.)
 

 Although the worker argued the trial court should weigh the contribution of each party’s attorney, the
 
 Walsh II
 
 court reasoned, “Whatever superficial appeal inheres in that egalitarian precept, the rules governing award of attorney fees speak to the contrary. The common fund doctrine rewards only a litigant whose efforts benefit a
 
 passive
 
 beneficiary. Where there is no passive beneficiary, as here shown, the general rule—that the major party litigant is not entitled to recover attorney fees—prevails.” (187 Cal.App.3d at p. 1279, italics in original.)
 

 Another case,
 
 Steinberg
 
 v.
 
 Allstate Ins. Co., supra,
 
 226 Cal.App.3d 216, applied the doctrine of equitable apportionment outside the workers’ compensation context. In
 
 Steinberg,
 
 homeowners filed suit after landslides damaged their homes. The suits included claims against several homeowners’ insurance carriers. One of the insurers ultimately settled the claims brought by its insureds. As a result of its payments, the insurer had a subrogation claim against the third party tortfeasors.
 
 (Id.
 
 at p. 219.) The insurer retained a law firm to pursue its subrogation rights and agreed to pay the firm 25 percent of any amount recovered.
 

 The consolidated cases filed by the homeowners were ultimately concluded via a $96.8 million “Global Settlement Agreement.” (226 Cal.App.3d at p. 220.) The law firms representing the homeowners moved to recover attorney’s fees from the insurer’s subrogation recovery. Counsel for the insurer objected, arguing that it was entitled to recover 25 percent of the moneys paid to the carrier, as set out in its contingency fee contract. Concluding that the insurer’s attorney did not “actively participate” in the litigation, the trial court awarded attorney’s fees to the homeowners.
 
 (Ibid.)
 

 The insurer raised several arguments on appeal. First, the insurer argued that the trial court incorrectly applied a balancing test in determining
 
 *575
 
 whether the doctrine of equitable apportionment should be applied. In particular, the insurer pointed out that the trial court listed the actions taken by the firms representing the homeowners, as compared to the actions taken by the firm representing the insurer.
 

 Second, the insurer contended the doctrine of equitable apportionment only applied if the insurer’s attorney had been a passive participant in the litigation. In other words, according to the insurer, if its attorney had even minimally participated in the case it could not be deemed passive and therefore the doctrine of equitable apportionment could not be applied.
 
 (Steinberg
 
 v.
 
 Allstate Ins. Co., supra,
 
 226 Cal.App.3d at p. 222.)
 

 The appellate court rejected these arguments and affirmed the trial court’s award of fees to the homeowners.
 
 Steinberg
 
 emphasized that the determination of whether the insurer’s attorney had actively participated in the litigation “cannot be made in a vacuum. The court was required to look at [law firm’s] level of participation. Certainly relevant to this inquiry is the work done which actually resulted in the creation of the $97 million settlement fund.” (226 Cal.App.3d at p. 222.)
 

 Steinberg
 
 also reasoned that the issue was a question of fact for the trial court. The court concluded that the focus of the inquiry was whether appellant actively participated “in the
 
 creation of the settlement fund.”
 
 (226 Cal.App.3d at p. 223.) In holding that the insurer did not actively participate,
 
 Steinberg
 
 noted that the trial court had before it declarations from the third party tortfeasors. The declarations stated that their decision to settle the case was influenced by the efforts of the homeowners’ attorneys, and that nothing done by the insurer’s attorneys had been a factor in their decision to enter into the settlement.
 
 (Id.
 
 at p. 223.) For these reasons,
 
 Steinberg
 
 affirmed the award of fees to the homeowners.
 

 Another case which is useful to consider is
 
 Estate of Korthe
 
 (1970) 9 Cal.App.3d 572 [88 Cal.Rptr. 465], In that case, the trial court awarded attorney’s fees to attorney Rose, who had represented several individuals in a will contest involving 31 beneficiaries. In reversing, the appellate court stated, “We appreciate that the record here indicates—and it is not really disputed—that Mr. Rose did the lion’s share of the work which led to the highly favorable settlement .... It may therefore seem inequitable that he should get more or less the same fee from his clients as the other counsel presumably will get from theirs. That, however, is a situation in which attorneys find themselves many times and it is up to them to protect themselves by arrangements with other counsel.”
 
 (Id.
 
 at pp. 576-577, fn. omitted.)
 

 
 *576
 
 Having considered these decisions, we now turn to the arguments raised in this case. Xerox contends that the trial court erred in awarding fees to respondents because Xerox was not a passive beneficiary. We agree. The reasons for our conclusion our discussed below.
 

 First, we agree with
 
 Walsh II
 
 and do not think the trial court should weigh the relative contributions of counsel to determine whether attorney’s fees should be awarded.
 
 (Walsh II, supra,
 
 187 Cal.App.3d at p. 1279.) As pointed out in that case, the common fund doctrine evolved to reward a litigant whose efforts benefit a
 
 passive
 
 beneficiary; the doctrine was not established to reward litigants whose attorneys are more effective, more visible, or who have spent more money in the prosecution of the litigation.
 

 Second, the language of section 3856 supports our conclusion. There is nothing in the statute’s wording that suggests the trial court should weigh the contributions of the party’s attorneys. Instead, section 3856 refers to situations where the “action is prosecuted by [either the employee or employer]
 
 alone
 
 ...” A literal interpretation of this language indicates that where attorneys for both the employer and the employee participate in the litigation, then the action is not prosecuted by either party alone. If the Legislature had intended to include a weighing process, it could have so stated.
 

 Third, any attempts to weigh the contributions of the attorneys would likely lead to inconsistent and unfair results. The problem is illustrated by considering what criteria the trial court should apply in making its determination. For example, should the trial court consider the quality of counsel’s efforts, or the quantity of actions taken? Should the amount of money spent figure into the determination? Should the hours billed be considered? Is the issue whether counsel actively participates in the
 
 litigation,
 
 or whether counsel actively participates in
 
 obtaining
 
 recovery? What if counsel’s involvement hinders the chances of obtaining recovery? In other words, what if counsel is active, but not effective?
 

 On the other hand, what if counsel’s decision to remain in the background during much of the litigation actually contributed to creation of the common fund? In fact, the trial court suggested as much in this case, when it stated “[Xerox’s attorney] did a good job in the respect that he didn’t get in the way ... he could have jumped in more. He was doing a good job. Had he done this, or- done that, he maybe could have done worse than just letting you do it.”
 

 The wide range of ways in which an attorney could be considered active in prosecuting the litigation or in contributing to creation of the fund
 
 *577
 
 supports our conclusion that the issue before the trial court is much more limited. Simply put, the issue is whether one party is a passive beneficiary. Where both parties employ attorneys, and both attorneys participate in the prosecution of the litigation, then there is no passive beneficiary.
 

 Of course, we do not suggest that the mere filing of a motion to intervene, for example, is sufficient. In that respect, we agree with the conclusion in
 
 Kaplan
 
 that this type of action clearly does not constitute prosecution of the action.
 
 (Kaplan
 
 v.
 
 Industrial Indem. Co., supra,
 
 79 Cal.App.3d at p. 709.) Nor do we suggest that a token appearance by a party’s attorney will suffice. (Cf.
 
 Eldridge
 
 v.
 
 Truck Ins. Exchange
 
 (1967) 253 Cal.App.2d 365, 367 [61 Cal.Rptr. 347].) Nonetheless, we do not think it will be difficult for the trial court to distinguish between such token or insincere efforts and actual involvement in the litigation.
 

 There are also sound policy reasons for reaching this conclusion.
 
 (Walsh II, supra,
 
 187 Cal.App.3d at p. 1279.) If trial courts were required to determine which attorney predominated, then prolonged litigation and duplicative efforts might result. Attorneys might waste scarce judicial resources by taking unnecessary actions as a way to avoid liability for the other party’s attorney’s fees.
 
 (Ibid.)
 

 Finally, we agree that the issue is one of fact for the trial court.
 
 (Walsh II, supra,
 
 187 Cal.App.3d at p. 1278.) However, in this case, the trial court erred as a matter of law. This is because it applied an incorrect standard. As pointed out earlier, in concluding that Xerox should pay a portion of respondents’ fees, the trial court stated, in pertinent part, “The subject action involved difficult questions of liability and required substantial expenditures, not only of time, but also of money. Intervenor devoted much of the former but little of the latter. In reality, intervenor had a relatively small investment in the case compared to that of plaintiff’s counsel. In the overall sense, considering the costs advanced by plaintiff’s counsel, it is difficult to say that intervenor was ‘active’ in the litigation. [¶] Giving due credit to intervenor for the degree of activity it did in fact show, the Court awards fifteen percent of the common fund as plaintiff counsel’s attorney fee.”
 

 The trial court’s statement suggests that it incorrectly emphasized the amount of money spent by Xerox in determining that Xerox was passive. The court’s statement also indicates that Xerox did spend quite a bit of
 
 time
 
 on the case and the court also recognized the “degree of activity” that was demonstrated by Xerox. Such weighing of degrees of activity is improper, as is an emphasis upon the money spent by the litigants as a basis for determining whether a litigant was passive.
 

 
 *578
 
 Although we could remand the case so that the trial court could apply the correct standard, we do not believe this is necessary. This is because of the trial court’s statements regarding “the degree of activity” Xerox did show. In other words, it appears that the trial court did agree that to some extent Xerox was active and involved in prosecuting the litigation.
 

 We agree with this conclusion and therefore conclude that the award of attorney’s fees was improper. As stated earlier, Xerox was involved in discovery, the pretrial settlement conference, and designated several expert witnesses for trial, including one expert in accident reconstruction. Counsel for Xerox was present during trial, and did engage in some questioning. Although it is obvious that the Kavanaughs’ attorneys dominated, that is not the test for determining whether section 3856, subdivision (b) should be applied. In addition, we note that Xerox’s involvement appears to have been greater than the involvement of the intervener in
 
 Walsh
 
 I.
 
 (Walsh
 
 I,
 
 supra,
 
 133 Cal.App.3d at p. 768, fn. 1.) In sum, we conclude that Xerox may not be characterized as a passive beneficiary of the litigation. The award of attorney’s fees pursuant to section 3856 was error.
 

 The judgment is reversed. Costs to appellant.
 

 Premo, Acting P. J., and Cottle, J., concurred.
 

 [1]
 

 All unspecified statutory references are to the Labor Code.
 

 [2]
 

 Section 3856, subdivision (a) provides, in pertinent part, “(a) If the action is prosecuted by the employer alone, the court shall first order paid from any judgment for damages recovered the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney’s fee which shall be based solely upon the services rendered by the employer’s attorney in effecting recovery both for the benefit of the employer and the employee.”